## SIDNEY B. MASON, Trustee,

*vs.*

## JOSEPH H. BAILY *et al.*

New Castle, March T. 1888.

*Wills; devise to " heir," " right heir," " heir at law; "
who take.*

1. If a devise be made to the "heir," "right heir," "heir at law," of a testator, and there be a person when the disposition of the will takes effect who answers that description, no other person can take, unless by plain declaration in other parts of the will the testator intends that some other person shall take, and sufficiently identifies him.

2. This is the rule also, where the devise is made to the heir, right heir, heir at law, of another person by a testator.

3. A bequest of personalty to the right heirs or to the heirs at law of an individual *prima facie* goes to such heir as *persona designata*, whether the bequest be to the heirs of the testator or of a stranger.

4. If a gift be made to one for life, with remainder to his right heirs, the heir in the strict sense is entitled.

5. If a bequest of personal property is made to A, to receive the income, dividends, and profits, and to pay over the same to B for her life and immediately after the death of B to assign and pay over the principal sum to the right heirs of B—the right heirs of B alone can take, to the exclusion of the husband of B—and to the exclusion of the administrator of B.

6. The right heir of a person deceased is he of the blood of such deceased upon whom the law casts the inheritance.

7. A husband is not the right heir of his deceased wife, in the strict and primary sense of that term.

8. An administrator is not a right heir, in the strict and primary meaning of that term, of a person dying intestate.

9

BILL FOR THE CONSTRUCTION OF A WILL.—The facts of the case and the material portions of the will in question are set forth in the opinion.

*W. C. Spruance* and *Charles M. Curtis*, for Arthur H. Grimshaw, one of the defendants:

By the purchase of a burial lot in a cemetery, the lot holder acquires no interest or estate in the land, but acquires only a license or privilege to make interment and erect monuments, etc. *Kincaid's Appeal*, 66 Pa. 411; *People* v. *St. Patrick's Cathedral*, 21 Hun, 184; *Buffalo City Cemetery* v. *Buffalo*, 46 N. Y. 503; *Partridge* v. *First Independent Church*, 39 Md. 631.

Nor will a lot holder acquire any interest in the soil, although the certificate given him by the cemetery company styles him as "proprietor," and although it purport on its face to be a conveyance to him and his heirs forever. *Partridge* v. *First Independent Church, supra; Richards* v. *Northwest Protestant Dutch Church*, 32 Barb. 42.

Such a right is neither land, tenement, nor hereditament. *Ibid.*

The right of burial is not an estate, but a contract privilege. *Craig* v. *First Presby. Church*, 88 Pa. 42, 54.

The privilege of burial comes to the family of the deceased lot holder, not as property or by virtue of any principles of law applicable to descent of the property of a dead person, but because such was the contract between the lot holder and cemetery company; viz., that a burial place should be secured for the lot holder and his family. *Cases, supra.* Therefore the trust fund consisted of personalty alone.

Whether the gift be original or substitutional, a bequest of personal property to the "heirs of A" is a gift

to those who would be entitled to personal estate under the Statute of Distributions. *Houghton* v. *Kendall,* 7 Allen, 76; *Scudder* v. *Vanarsdale,* 2 Beas. 109; *Welsh* v. *Crater,* 32 N. J. Eq. 177; *Ferguson* v. *Stuart,* 14 Ohio, 140; *Corbitt* v. *Corbitt,* 1 Jones, Eq. 117; *Nelson* v. *Blue,* 63 N. C. 660; *Evans* v. *Hartlee,* 9 Rich. L. 501; *Eddings* v. *Long,* 10 Ala. 203; *Haschall* v. *Cox,* 49 Mich. 435.

In those States where the husband is, by the Statute of Distributions, entitled to succeed to the personal estate of his deceased wife in case she dies intestate, he will be entitled to à bequest to the "heirs" of his wife. *Gibbons* v. *Fairlamb,* 26 Pa. 218; *Sweet* v. *Dutton,* 109 Mass. 589; *Eby's Appeal,* 84 Pa. 241; *Richards* v. *Miller,* 62 Ill. 417; *Eddings* v. *Long,* 10 Ala. 203.

By the Statute of Distributions of Delaware, "if the intestate be a married woman at the time of her death, her husband shall be entitled to the whole of such residue." Rev. Code, chap. 89, § 32, p. 548.

In this State the husband is recognized as an "heir" of his deceased wife as to personal property, because he is as much a distributee as a child or father. 14 Del. Laws, chap. 550, § 5, Rev. Code, p. 479.

Assuming it to be a mixed fund, by the terms of the will Mrs. Grimshaw took in her lifetime, by the operation of the rule in *Shelley's Case,* an equitable estate in fee simple in so much of the fund as was real estate, and became the absolute owner of so much of the fund as was personal estate; and upon her death intestate her said equitable estate in the land descended under the intestate laws of this State, and the personalty belongs to her administrator.

This is not a rule of intention, but an inexorable rule of law which operates "notwithstanding the clearest indication of the intention of the donor to the contrary." *Jordan* v. *Adams,* 9 C. B. N. S. 497.

The rule was recognized and declared to be the law in *Griffith* v. *Derringer*, 5 Harrington, 284.

The rule also applies to a bequest of personal property with similar words, indicating an intention to vest in the first taker a life estate, with a remainder to his heirs. *Elton* v. *Eason*, 19 Ves. Jr. 78; *Williams* v. *Lewis*, 6 H. L. Cas. 10, 13; *Coon* v. *Rice*, 7 Ired. L. 217; *Horne* v. *Lyeth*, 4 Harr. & J. 431.

The rule in *Shelley's Case* applies to equitable as well as legal estates; but the estate of the ancestor and the limitation to the heirs must be of the same quality, *i. e.*, both legal or both equitable. 2 Jarm. Wills, 335 *et seq.*

The Statute of Uses does not apply where the trustee is invested with any active duty. *Barker* v. *Greenwood*, 4 Mees. & W. 429; *Ware* v. *Richardson*, 3 Md. 508.

Courts will always, if possible, vest the legal estate in the trustee, in cases where the beneficiary is a married woman, so that the Statute of Uses will not convey the legal estate to her and so bring the estate within the control of her husband. *Ware* v. *Richardson*, 3 Md. 505; *Bowen* v. *Chase*, 94 U. S. 812, 24 L. ed. 184; *Harton* v. *Harton*, 7 T. R. 652.

The trust for the use of a married woman requires the legal estate to be in the trustee throughout, *i. e.*, both during the life estate and the estate in remainder. *Harton* v. *Harton, supra; Brown* v. *Whiteway*, 8 Hare, 145.

Applying either or both of these rules to this case, the legal estate would vest throughout in the trustee, and Mrs. Grimshaw would take an equitable life estate followed by an equitable limitation to her heirs in remainder, which would vest in her an equitable estate in fee simple.

A trust " to convey " is an active, special trust, which requires that the legal estate should vest in the trustee.

*Shelley* v. *Edlin,* 4 Ad. & El. 582; *Barker* v. *Greenwood,* 4 Mees. & W. 429 ; *Garth* v. *Baldwin,* 2 Ves. Sr. 646 ; *Booth* v. *Field,* 2 Barn. & Ad. 564; *Noble* v. *Bolton,* 11 Ad. & El. 188; *Sears* v. *Russell,* 8 Gray, 89 ; *Ware* v. *Richardson,* 3 Md. 505; *Kirkland* v. *Cox,* 94 Ill. 400.

A trust for one for life, with remainder to such persons as the life tenant should by will appoint, is such an active trust as requires that the legal estate should vest in the trustee throughout. *Doe* v. *Hicks,* 7 T. R. 433 ; *Brown* v. *Whiteway,* 8 Hare, 145; *Shelley* v. *Edlin, supra.*

The Statute of Uses in force in Delaware is as follows : the legal estate shall accompany the use and pass with it. Rev. Code, p. 500.

The courts have, to some extent, applied to trusts of personalty the rule applicable to trusts of realty, and have held that the statute transferred the use into possession. Yet if the trust be an active trust, the statute does not apply. *Harley* v. *Platts,* 6 Rich. L. 310–315 ; *Denton* v. *Denton,* 17 Md. 403.

The same rule of law must be applied to realty and personalty when in a given case they are given together by a general gift of residue. *Elton* v. *Eason,* 19 Ves. Jr. 73; *King* v. *Beck,* 12 Ohio, 390 ; *Aker* v. *Aker,* 23 N. J. Eq. 26 ; *Cockins' Appeal,* 1 Cent. Rep. 890, 111 Pa. 26.

In such case when the rule in *Shelley's Case* applies the absolute interest in the personalty goes to the life tenant, and at his death intestate his administrator will be absolutely entitled. *Elton* v. *Eason,* and *King* v. *Beck, supra.*

By the law in relation to the property of married women in Delaware, Dr. Grimshaw is entitled to one half of all his wife's real estate for his life. 15 Del. Laws, chap. 550, § 5, passed April 9, 1873.

In construing the words of the trust "to convey to the right heirs of the said Ann Elizabeth Grimshaw, their heirs and assigns forever," the words "their heirs and assigns forever" are to be regarded as superfluous.

Superadded words of limitation are not sufficient to convert words of limitation to which they are added into words of purchase. 2 Jarm. Wills; *Physick's Appeal,* 50 Pa. 128; *Nice's Appeal,* Id. 143.

The intervention of the power did not affect the operation of the rule; and since the power was not exercised it is as if it had not been inserted at all. *Brown* v. *Whiteway,* 8 Hare, 145; *Physick's Appeal, supra; Doe* v. *Martin,* 4 T. R. 64; *Brown* v. *Renshaw,* 57 Md. 67.

*Willard Saulsbury, Jr.,* for Joseph H. Baily, Edith B. Value, Sidney B. Mason, and Henry B. Nones, guardian *ad litem* of James E. Baily, defendants:

The intention of the testator, gathered from the whole will and the circumstances under which he made it, is to govern the construction.

Even though unreasonable, the intention of the testator, if it violates no principle of law or morality, is the guide in giving effect to a will. *Den* v. *McMurtrie,* 15 N. J. L. 287; 4 Kent, Com. 535, 537; *Smith* v. *Bell,* 31 U. S. 6 Pet. 75, 8 L. ed. 325; *Welch* v. *Huse,* 49 Cal. 501, 509.

The words "right heirs" should have their strict technical meaning. Theob. Wills, 273; *Burges* v. *Thompson,* 13 R. I. 712; 4 Kent, Com. 551 note (*a*); 1 Co. Litt. * 503, and cases hereafter cited.

Technical words must be taken in their technical sense, in the absence of explanation on the face of the will. Wigram, First Proposition, p. 58, § 21; Id. Second Proposition, p. 66, § 24; *Clark* v. *Mosely,* Rich. Eq.

396, 400–402; *Luce* v. *Dunham*, 69 N. Y. 39; *Mounsey*·v. *Blamire*, 4 Russ. 384–387; *Brearley* v. *Brearley*, 1 Stockt. 24, 25; *Shore* v. *Wilson*, 9 Clark & F. 525.

This, however, is not to override the testator's intention, but to effectuate that intention. *Langham* v. *Sanford*, 2 Meriv. 22.

Our courts have thus taken technical words in construing wills. *Kean* v. *Hoffecker*, 2 Harrington, 103–116.

If from the words of a will the intention is a matter of doubt, the words must be construed according to their legal import. *Annable*·v. *Patch*, 3 Pick. 360, 363.

Specific words in a will must have the technical effect derived from usage and sanctioned by decisions. *Hawley* v. *North Hampton*, 8 Mass. 3, 38, 39; *Ide* v. *Ide*, 5 Mass. 500; *Myers* v. *Eddy*, 47 Barb. 263–266.

Heirs are those of the kindred of a decedent upon whom the law casts the inheritance immediately upon his decease. *Dodge's Appeal*, 106 Pa. 220; 2 Bl. Com. 201; *Williamson* v. *Williamson*, 18 B. Mon. 329; *Smith* v. *Butcher*, L. R. 10 Ch. D. 116.

The word "heirs" must be construed in its strict technical meaning, unless the contrary intent plainly appear in the will. *Ivins' Appeal*, 106 Pa. 176; *Dodge's Appeal*, Id. 220; *Love* v. *Buchanan*, 40 Miss. 758; *Gold* v. *Judson*, 21 Conn. 616; *Rand* v. *Butler*, 48 Conn. 298; Leake, Property in Land, 161, 162.

It is incumbent upon those who contend that the language of the testator is not to be understood according to its natural and literal meaning to exhibit some solid and satisfactory reason why the words employed are not to be understood in their clear, plain, and literal signification. *Roddy* v. *Fitzgerald*, 6 H. L. Cas. 877; *Williamson* v. *Williamson*, 18 B. Mon. 329.

The heir will take under a bequest as *persona designa-*

*ta.* *De Beauvoir* v. *DeBeauvoir,* 3 H. L. Cas. 524; *Mounsey* v. *Blamire,* 4 Russ. 384–387; *Bowers* v. *Porter,* 4 Pick. 209.

A bequest of personalty to the right heirs or to the heirs at law, or to the next heir of an individual, *prima facie,* goes to such heir as *persona designata* whether the bequest be to the heirs of the testator or of a stranger. Theob. Wills, 273.

Equity considers that done which should have been done. *Chamberlain* v. *Taylor,* 105 N. Y. 630, 7 Cent. Rep. 292; *White* v. *Howard,* 46 N. Y. 162.

This trust estate consists of both personal and real property, viz., the stocks and bonds and the cemetery lot, and they are sufficient in law to give to this trust estate the character of a mixed fund.

The rule that a bequest of personalty to the "right heir," or "heir at law" goes to such "heir" as *persona designata* applies *a fortiori* to a mixed fund; and in such case the heir will take all and the next of kin nothing. Theob. Wills, 273; *DeBeauvoir* v. *DeBeauvoir,* 3 H. L. Cas. 524; *Boydell* v. *Golightly,* 14 Sim. 327, 346; *Todhunter* v. *Thompson,* 26 Weekly Rep. 883; *Gwynne* v. *Muddock,* 14 Ves. Jr. 488; Roper, Leg. 93 (3). In the same way if the gift is to A for life, with remainder to his heirs, the heir in the strict sense is entitled. Theob. Wills, 273; citing *Re Dixon,* L. R. 4 Prob. D. 81; *Smith* v. *Butcher,* L. R. 10 Ch. D. 113.

Right heirs are those who would have taken real estate, and not those who would be entitled under the Statutes of Distribution. *Gordon* v. *Small,* 53 Md. 550.

The word "heir" when applied to the succession of personal estate has frequently been construed to mean "next of kin." Wigram, Wills, O'Hara's ed. 304; *Gittings* v. *McDermott,* 2 Mylne & K. 69, 70, 76, 78; *Vaux* v. *Henderson,* Jac. & W. 388, note; *Welsh* v. *Crater,* 32 N. J. Eq. 177; Roper, Leg. 89.

"Next of kin" means nearest in blood relation, and excludes the husband and wife. 2 Jarm. Wills, 643; *Wright* v. *M. E. Church*, Hoffm. Ch. 211–213; Hawk. Wills, 97; *Tillman* v. *Davis*, 95 N. Y. 29, 30, 47 Am. Rep. 1; *Murdock* v. *Ward*, 67 N. Y. 392, 393; *Wilkins* v. *Ordway*, 59 N. H. 378; *McKinney* v. *Mellon*, 3 Houston, 278.

Neither the husband nor the wife takes as next of kin under the statute. *Garrick* v. *Camden*, 14 Ves. 372–376, 381–386; Theob. Wills, 276; *Boydell* v. *Golightly*, 14 Sim. 338, 347; *Watt* v. *Watt*, 3 Ves. Jr. 244; *Green* v. *Hudson River R. Co.* 32 Barb. 25, 28; *Drake* v. *Gilmore*, 52 N. Y. 389; *Bailey* v. *Wright*, 18 Ves. Jr. 52.

The husband and wife are not heirs or next of kin to each other, within the ordinary meaning of a will. *Ivins' Appeal*, 106 Pa. 176; 2 Kent, Com. 136; 2 Jarm. Wills, 653, 666; *Dodge's Appeal*, 106 Pa. 216; *Luce* v. *Dunham*, 69 N. Y. 36–45.

The power of appointment in the wife did not in any sense vest the property in her. *Field* v. *Hitchcock*, 17 Pick. 182, 183; *Grosvenor* v. *Bowen*, 15 R. I. 549, 4 New Eng. Rep. 760, 761; 2 Kent, Com. 324; *Westcott* v. *Cady*, 5 Johns. Ch. 334.

Personal property may be limited over after a bequest for life by way of executory bequest. *Pepper* v. *Warrington*, 4 Harrington, 55.

Where a will is capable of two interpretations that one should be adopted which prefers those of the blood of the testator to strangers. *Wood* v. *Mitcham*, 92 N. Y. 375, 379; *Scott* v. *Guernsey*, 48 N. Y. 106.

Where the intention of the testator is doubtful the motive has an important bearing. *Hilliard* v. *Kearney*, 1 Busb. Eq. 221; *Smith* v. *Bell*, 31 U. S. 6 Pet. 75, 77, 8 L. ed. 325, 326.

The law favors that construction of a will which will

not tend to disinherit the heirs, unless the intention to do so is most clearly expressed. *Scott* v. *Guernsey*, 48 N. Y. 121; *Rupp* v. *Eberly*, 79 Pa. 141; *Bender* v. *Dietrick*, 7 Watts & S. 284; *Wright* v. *Hicks*, 12 Ga. 155; *Howard* v. *American P. Soc.* 49 Me. 288; *Hitchcock* v. *Hitchcock*, 35 Pa. 393, 400; *Hayden* v. *Stoughton*, 5 Pick. 528, 536; *Schauber* v. *Jackson*, 2 Wend. 13; *French* v. *M'Ilhenny*, 2 Binn. 13.

Courts will not permit a single uncertain cause to defeat the general intent of the testator. *Baxter* v. *Baxter*, 122 Mass. 87; *Smith* v. *Bell, supra.*

The property never being vested in Mrs. Grimshaw, in whole or in part, the marital rights of Dr. Grimshaw cannot attach; neither can he claim any part of it as her administrator or in any way under our Statute of Distributions.

THE CHANCELLOR.—By his will, dated February 6, 1869, Joseph T. Baily, after providing for the payment of his debts and funeral expenses and the expenditure of $500 by his executors in the construction of the family vault, disposed of the rest, residue, and remainder of his estate, real, personal, and mixed, whatsoever and wheresoever the same might be, into six equal parts.

The particular clause of the will under which the contention in this cause arises is as follows: "Another equal one-sixth part thereof I give, bequeath, and devise unto Sidney B. Mason, in trust to pay the income, dividends, and rents accruing thereto (after deducting all reasonable expenses) to her sister, my daughter Ann Elizabeth Grimshaw, for and during the term of her natural life; and immediately after the decease of the said Ann Elizabeth Grimshaw, then to convey the said equal one-sixth part thereof according to the order and direction of the last will and testament of the said Ann Elizabeth Grimshaw

or according to the order and direction of an instrument in the nature of the last will and testament executed by the said Ann Elizabeth Grimshaw, in the presence of at least two witnesses, and on the failure of such last will or testament or instrument, then to convey the same to the right heirs of the said Ann Elizabeth Grimshaw, their heirs and assigns forever."

The fourth item of the will was as follows: "I authorize and empower my executors hereinafter named or the survivor of them, should it be deemed necessary, in making distribution of my estate according to this my will, to sell and convey any or all of my estate, either at public or private sale, for the best price that can be obtained, and deed or deeds in fee simple to the purchaser or purchasers thereof, or other conveyances or transfers to make, execute, and deliver."

The testator appointed Joseph T. Baily and Sidney B. Mason executors.

Letters testamentary were granted to the executors January 29, 1874.

Testator left to survive him children—both sons and daughters.

Ann Elizabeth Grimshaw, *cestui que trust,* died August 16, 1884, intestate and without issue, without having executed any instrument in the nature of a will as provided for by said will of testator, leaving to survive her her husband, Arthur H. Grimshaw, and Joseph H. Baily, a brother, and Sarah B. Mason and Edith B. Value, sisters, and James G. Baily, and B. V. Baily, nephews, all of whom are defendants.

Arthur H. Grimshaw, the husband, claims the whole trust estate as right heir of his deceased wife, and also as her administrator.

The brothers, sisters, and nephews of Mrs. Grimshaw claim the one sixth of the testator's estate, which was

given, bequeathed, and devised to Sidney B. Mason for
her as aforesaid.

There is no proof of the nature, character, and descrip-
tion of the property and estate of the testator, at the date
of his will.

It seems, from the statement of counsel on all sides,
that at the time of his death the testator owned two bu-
rial lots in Brandywine Cemetery and a considerable per-
sonal estate.

The bill in the cause is filed by the trustee for instruc-
tions as to the meaning of the will.   There is nothing in
the context or other parts of the will of Joseph T. Baily,
the testator, to explain whom he meant by the right heirs
of Ann Elizabeth Grimshaw.

The devise and bequest to her and her right heirs be-
fore recited must of course speak for itself; and we are
in no respect otherwise enlightened as to its true mean-
ing and construction.

"In the construction of devises," says Chancellor Kent
(Commentaries, vol. IV., 537), "the intention of the testa-
tor is admitted to be the pole star by which the courts
must steer; yet that intention is liable to be very much
controlled by the application of technical rules and the
superior force of technical expressions."   And in a note
to this remark it is said "that the rule is understood to
be settled that if a devise be made to the heir, right heir,
heir at law, or lawful heir of the testator, and there be a
person, when the disposition of the will takes effect, who
answers that description, no other person can take, unless
by a plain declaration in other parts of the will the tes-
tator intends that some other person shall take, and has
sufficiently identified him."

Whatever may have been the remarks said to have
been made by *Lord* Campbell in respect to the hopeless
confusion of English decisions upon this subject of the

interpretation of wills, I must regard the English law as now settled as regards the devises and bequests of personal property in England to heirs at law, right heirs, or lawful heirs, by the decisions of *Smith* v. *Butcher*, L. R. 10 Ch. D. 113; and *De Beauvoir* v. *De Beauvoir*, 3 H. L. Cas. 534.

In the first of these cases, which seems to be the latest decided on the very question before me, it was decided that in the bequests of personal estate to the children of A during their lives, and on the decease of either of them his or her share of the principal to go to his or her lawful heir or heirs, "lawful heir" or "heirs" must be read literally, and not as meaning "next of kin," "executors," or "administrators" or "children."

The will before Jessel, *M. R.*, in that case, was not attested so as to pass real estate, and therefore passed personal estate. The Master of the Rolls said: "I think the words 'heir or heirs' must bear their ordinary and primary meaning. The true rule," he said, "is that laid down by *Vice-Chancellor* Kindersley in *Low* v. *Smith*, 2 Jur. N. S. 344, where he says, referring to *Lord* St. Leonards' decision in *De Beauvoir* v. *De Beauvoir*, 'There was no peculiarity in this particular question;' it was a mere application of what was the ordinary elementary rule of construction, that for the purpose of construing any word in any will that ever was executed, such word must receive its ordinary and primary meaning, unless the court is satisfied that the testator intended to use it in a secondary and less proper sense."

Now he says: "That applies to all wills, and not the less so when any particular word used by a testator is a technical word and a word of art, which is less difficult to construe." He stated that he must take the words of the will as they stood; that "there is no expression which has a clearer meaning in law than the expression 'law-

ful heirs.'" He defines these words to mean "the
person or persons who either alone or together would
succeed to the fee simple estate of which the intestate
ancestor died seised in possession at the time of his death."
The rule in *Shelley's Case* was interposed in behalf of the
defendant in that case, as it has been in this by the solic-
itors on behalf of Dr. Grimshaw. The Master of the
Rolls said, I think very properly, that the rule in *Shel-
ley's Case* had no application to the case before him.
The only thing before him was the question whether,
when a testator bequeaths personal estate to "heirs," he
means that it is to descend to the persons who can alone
succeed to personal estate, and not to the persons who
can succeed only to real estate. That was concluded, he
said, by decisions to the contrary two or three hundred
years old, which are all summed up by *Lord* St. Leon-
ards in his speech in *De Beauvoir* v. *De Beauvoir*, 3 H.
L. Cas. 524. That being out of the way he concluded
that there was nothing else at all to be found in the will
before him. It was, he said, merely a gift of personal
estate in remainder to "heirs;" and it makes no differ-
ence whether the gift is an immediate gift in possession
or a gift in remainder.

*Lord* St. Leonards, in his speech in the House of
Lords in the case of *De Beauvoir* v. *De Beauvoir*, said
that the question was, "Who is the person to take? . . .
It does not matter," he said, "whether he is described as
right heir, or whether he belongs to the class of legal
right heirs, if he is the person and the only person who
can take, supposing the real and personal property are to
go together as a blended fund." "The moment you as-
certain that the heir at law, at the death of the testator
[and of course this remark will apply where the heir at
law is to take at the death of another], is the person en-
titled to the real estate, you ascertain at the same mo-

ment, assuming the intention, that the same person is to take the personal estate as *persona designata.*" And, further, that in all cases "(whether the gift is immediate or in remainder, whether it is of personal estate or of a mixed fund of real and personal estate) the question simply is whether there is such a description on the face of the will as amounts to a *designatio personæ*, and enables you to give to a person, not filling the character in which he would be entitled to take it by law, the property which the testator bequeathed to him." *Lord* St. Leonards in this case announced these principles stated by him, after an exhaustive review of the English authorities on the subject, as a result of those decisions.

In the case of *Mounsey* v. *Blamire*, 4 Russ. 384, where there was a pecuniary legacy given by a testatrix to her "heir," by that designation, it was held that the word was to be understood in its legal and ordinary sense, unless controlled by the context of the will; and the heir at law took the legacy, to the exclusion of the next of kin. And that case was referred to with approval by the Lord Chancellor in the case of *De Beauvoir* v. *De Beauvoir*.

But I will not multiply the citation of English authorities. It is unnecessary to do so. The cases already cited establish the doctrine laid down by Theobald in his treatise on Wills, published since these decisions, that a bequest of personalty to the right heirs, or to the heirs at law, or to the next heir of an individual, *prima facie* goes to such heir as *persona designata*, whether the bequest be to the heirs of the testator or of a stranger; and that this rule applies *a fortiori* to a mixed fund; and that if a gift is to A for life, with remainder to his heirs, the heir in the strict sense is entitled.

The authorities in this country are conflicting, and it would be impossible to reconcile them, were I to attempt

to do so. I shall not assume this laborious office, but shall refer briefly to some of the more prominent decisions.

In the case of *Wilkins* v. *Ordway*, 59 N. H. 378, it was held that the word "heirs," in its technical, common-law signification, does not embrace all who would share in the personal estate under the Statute of Distributions; and the bequest to the heirs of a deceased wife does not include her surviving husband, unless it appears from other parts of the will that such was the intention of the testator.

In this case Clark, *J.*, remarked: "The common-law doctrine of dower and curtesy originated in the fact that husband and wife are not heirs of each other. Ordinarily, technical terms are to be understood according to their legal signification, unless some evidence appears of an intention to use them in a different sense."

In *Richardson* v. *Martin*, 55 N. H. 45, it was held, he said, that the widow of a devisee cannot take as heir of her husband, under a clause giving certain bequests to him and his heirs, unless it is apparent from the will that the word "heirs" is not used in its ordinary sense.

Upon the authority of that case he decided that the appellant was not entitled to a share in the estate under the provisions of the will giving one half of the estate to the heirs of his wife. The judge, however, remarked that as the interpretation of a will is the ascertainment of the testator's intention, very little competent evidence may be sufficient to show that the testator used the word "heirs" in a broader sense than its legal meaning, intending to include the husband of a deceased wife or the widow of a deceased husband; and when such intention is shown by competent evidence, it is his will, however inartificially expressed; but ordinarily in the absence of evidence showing a different intention the word "heirs" will be understood as used in its legal sense.

I gather from the argument of counsel in this case that in the State of New Hampshire the husband succeeds to the estate of his wife in the same right and quantity as the wife would succeed if he was deceased; and that the husband would therefore be one of the distributees with the children.

In *Gordon* v. *Small*, 53 Md. 561, it is said by the court: "If a party limits an interest or estate in trust to his heir or to the heir of another person, the proper sense and meaning of the word is not necessarily to be departed from because the subject of the donation or trust happens to be personal estate. It is perfectly competent to a party to give to his heir or heirs, by that description alone, if it sufficiently designates the party or parties intended to take, any sum of money that the donor may think proper to give, or even the whole of his personal estate."

It is simply a question as to what persons or class of persons were intended to be embraced by the description; and the rule of construction is that the terms employed should be allowed their established legal signification, unless controlled by the context of the instrument.

This subject was very fully and carefully considered by the Lord Chancellor (*Lord* St. Leonards) in the case of *De Beauvoir* v. *De Beauvoir*, 3 H. L. Cas. 424, whose opinion was concurred in by the other members of the court. In speaking of the result of the authorities, at page 557, he says: "As far, therefore, as the authorities go with respect to personal estate, whether the gift be an immediate gift, or whether it be a gift in remainder, the cases appear to me to be uniform—to give to the words the sense which the testator himself has impressed upon them—that if he has given to the heir, though the heir would not by law be the person to take that property, he is the person who takes as *persona designata*. It

is impossible to lay down any other rule of construction."

In this case the court admitted that there are cases in considerable number and of high authority, which hold that where the gift is to the heir or heirs by way of substitution for the original or preceding legatee or donee. the word "heirs" is construed as meaning the persons who would be entitled to take the personal estate in case of intestacy,—that is, the word "heirs" is held to mean those persons that would be entitled to the personal estate of the first donee or legatee by virtue of the Statute of Distributions if that person had died intestate, including, therefore, a widow, but not a husband,—and gave examples of such cases, and might have given many more such examples. But in this case they say: "The limitation of the estate is not by way of substitution within the meaning of the authorities; but the terms 'right heirs' are used simply to describe donees and remaindermen; and therefore the case falls directly within the principle laid down in the cases of *De Beauvoir* v. *De Beauvoir,* *Mounsey* v. *Blamire,* and *Smith* v. *Butcher.*"

In *Dodge's Appeal,* 106 Pa. 216, the testatrix died leaving to survive her two daughters A and B and a son C. By her will she devised certain real estate to a trustee, to pay one third of its income to A, another third to B, and the remaining third to C, for the term of their natural lives respectively, and from and after their decease to vest absolutely in their heirs forever. C died intestate and without issue, leaving a widow. It was held that his share under the will passed on his decease to his sisters A and B, and not to his widow. It was also held that the technical meaning of the word "heirs" must be given to it when used in a will, unless there is the clearly expressed intent to the contrary. Sterrett, *J.,* in delivering the opinion of the court, said: "The question thus presented by the record is, whether, under Mrs.

Ryan's will, the portion in which her son Edward had a beneficial interest during life now goes to his widow or to his sisters.    In other words, Is the widow the heir of her husband, or are the appellants his heirs, according to the true intent and meaning of the will?    If the fund for distribution were personalty, the widow would perhaps be entitled to participate therein; but inasmuch as it bears the impress of realty, the one third in which Edward had an equitable life interest was given by his mother's will to his heirs forever.    In the devise over, the remainder in fee to take effect immediately upon the expiration of the equitable life interests respectively, the testatrix used the technical word 'heirs' which in a will is to be understood in its legal or technical, and not in its popular, sense, unless the contrary intent is so plainly apparent that it cannot be misunderstood."

The same judge remarked that the heirs of a decedent are those of his kindred, upon whom the law immediately upon his decease casts the estate in real property; and the estate so descending to the heir is called the inheritance.    He admits that at common law neither the husband nor the wife could be heir to the other.    Where is the room, therefore, for the word "perhaps" in the above extract from the opinion?

The case, however, was rightly decided, and on correct principles of law, notwithstanding the use of that word.

In *Ivins' Appeal,* same volume of the same reporter, 106 Pa. 176, the syllabus of the case is as follows:

" 1. Technical words appropriately used in a will must receive their technical signification, unless a contrary intent be apparent from a reading of the will.

" 2. A testator gave and devised his residuary estate, consisting of personalty and realty, to trustees in trust for his daughters, for life, with a power of testamentary appointment in the daughters, and, in default of appoint-

ment, to the children or issue of such daughters, and, in default of such will and child or children, or issue of such, then the principal to go to the heirs and next of kin of the daughters so dying, as provided by the Intestate Law of Pennsylvania,' upon the death of a daughter intestate and without issue. Held, that there being no apparent intent to the contrary, the words 'heirs' and 'next of kin' must receive their technical meaning; that the brothers and sisters of the said deceased daughter were, as such heirs and next of kin, entitled to her share of realty and personalty so limited in trust, to the exclusion of her surviving husband, who was neither her 'heir' nor 'next of kin,' within the technical sense of said limitation."

*Mr. Justice* Green, in announcing the opinion of the court in this case, said: "It has been so often held that when technical words are used in a will or other instrument they must have their technical meaning, unless a contrary intent appear, that it would be mere affectation of learning to cite the authorities."

Again: "There is no occasion here to give an untechnical meaning to technical words, as was done in the cases referred to in the appellant's argument, in which the word 'heirs' was held to have the same meaning as 'next of kin' or distributees or persons entitled under the intestate law."

Again, he says: "It is a canon of construction settled in many cases, that the word 'heirs' shall receive its appropriate technical sense, unless there is some language or expression which shows that it was used in the broader and more popular sense."

Again: "Whether we consider the strict meaning of technical words employed, or the clear intent of the testator as the guide in the construction of this testament, the result is the same."

Now let us apply the principles hereinbefore stated, and the remarks of the judges announcing the opinions in the cases hereinbefore cited, to the will of Joseph T. Baily, the testator in the will before us. To what conclusion must we necessarily arrive?

Baily's will was executed in 1869. He died in 1874. It does not appear in what his estate consisted when he made his will. It appears to have consisted, when he died, of two burying lots in the Wilmington and Brandywine Cemetery, and of a large personal estate.

The will contains this provision: "I authorize and empower my executors hereinafter named or the survivors of them, should it be deemed necessary in making distribution of my estate according to this my will, to sell and convey any or all of my estate, either at public or private sale, for the best price that can be obtained and deed or deeds in fee simple to the purchaser or purchasers thereof, or other conveyances or transfers to make, execute, and deliver."

In the third item of the will he says: "And touching all the rest, residue, or remainder of my estate, *real, personal, and mixed,* whatsoever and wheresoever the same may be, I give, devise, and bequeath the same as follows:" then follows the gift, bequest, and devise hereinbefore recited "unto Sidney B. Mason, in trust to pay the income, dividends, and rents accruing thereto (after deducting all reasonable expenses) to her sister, my daughter, Ann Elizabeth Grimshaw, for and during the term of her natural life; and immediately after the decease of the said Ann Elizabeth Grimshaw, . . . then to convey the same to the right heirs of the said Ann Elizabeth Grimshaw, their heirs and assigns forever."

Now, considering the terms used by the testator, "estate, real, personal, and mixed, give, bequeath, and

devise, sell and convey," one having no knowledge nor means of knowledge of what in fact the property of the testator consisted, in determining that question, would be necessarily forced to the conclusion that it was such as could be sold, bequeathed, devised, and conveyed; for these terms necessarily import that they were meant to be applied to existing subject-matter to which they were applicable, and to like assurances of title.

It is true that the will operates only from the death of the testator, and can apply only to such property and estates as testator had or was entitled to at the time of his death; but in construing the intention of the testator when a will is made, the terms which he uses in his will may be fairly considered in ascertaining the character of the property which was meant to be included in the will by the terms which he uses in respect thereto.

It is true that the solicitors for Grimshaw say that in *Sweet* v. *Dutton*, 109 Mass. 589, similar words were used in a trust deed which disposed of a trust fund consisting of personalty alone, and were not given any weight by the court in determining who were the persons who became the beneficiaries under the terms of the trust deed.

In the case of *Sweet* v. *Dutton*, A, by deed, gave all her property, real and personal, to a trustee, in trust to pay the income to her daughter during her life, and on her death to pay and transfer the trust property as she should by will appoint; and in default of appointment to convey and pay over the trust property to her heirs at law.

The deed provided that the trustee might change the mode of investment of any of the property, real and personal, and invest the proceeds as he might see fit—and referred to a schedule annexed as containing all the property conveyed by the deed.

This property was all personal, and the trustee made no change in the investment.

It was held that on the death of A intestate the prop-
erty went to her husband, and not to her child.

The schedule annexed to the deed contained only
bonds, railroad stock, and bank stock.

Of course there was no necessity in the interpretation
of that deed to refer for any purpose, for intention or
otherwise, as to the property included in the trust deed,
that property being specifically mentioned in the trust
deed; and there was no reason why the court in deter-
mining the persons to be benefited by the trust should
give any weight to the terms used as descriptive of the
property, or even referring to said terms in determining
who were the persons who became the beneficiaries under
the terms of the trust deed, because the schedule thereto
annexed clearly showed the character of the property
intended by the trust deed.

My only reason for referring to the terms used in
Baily's will is that the property contemplated by the
testator in his will was not specifically mentioned; and
that in the absence of any specific mention of the prop-
erty intended to be disposed of by the will, the terms
used by the testator may legitimately be referred to,
with a view to ascertain his intention as to the benefici-
aries under the will.

The will uses the term "her right heirs" as descrip-
tive of the beneficiaries under the will after the death of
Mrs. Grimshaw. There was no word in the testator's
will as to whom he meant by the words "her right
heirs," except those words themselves. These words
must speak for themselves; the question in this case
being what technical words mean.

It may not be amiss in this connection to notice what
was said by the court in the case of *Merrill* v. *Preston*,
135 Mass. 454. In that case the court said: "Viewed
as authority, however, *Sweet* v. *Dutton* [109 Mass. 589],

it should be noticed, relied largely on *Mace* v. *Cushman*, 45 Me. 250, which has since been overruled in the State where it was decided (*Lord* v. *Bourne*, 63 Me. 368),. stands almost entirely alone (see *Richardson* v. *Martin*, 55 N. H. 45, 47), and is hardly to be reconciled with the generally accepted rules upon the subject. There is a. strong presumption in favor of giving words their natural meaning, and against reading them as if they said something else, which they are not fitted to express."

There are cases in this country where a different signification to the words "lawful heirs" has been given. Some of these cases have been cited by the solicitors on behalf of Dr. Grimshaw; thus in 1 Jones, Eq. 117, Pearson, *J.*, said: "The word 'heirs' is not appropriate to the disposition of personal property; and when used in reference to it, it means those who take by law or under the Statute of Distributions. This is the rule when there are no other words to give it a different meaning; here, the other words fix that to be the meaning, for it is put in opposition to 'children.'"

But may not the words "heirs," "lawful heirs," "right heirs," be used as *designata persona?* If not, why not? When so used where is the inappropriateness to the disposition of personal property, more than to the disposition of real property? Such use is in respect to persons who are to take, and not in respect to property to be taken.

To say that these words mean those who take under the Statute of Distributions is to say that technical words are not to have a technical signification in the absence of any words or circumstances in or attending the execution of wills.

*Judge* Pearson, in speaking of lawful heirs as meaning those who take under the Statute of Distributions, says: "This is the rule when there are no other words.

to give it a different meaning," and immediately adds-
" here the other words fix that to be the meaning, for it
is put in opposition to children."

Without the other words, which fix that to be the
meaning, then the words "lawful heirs" do not necessa-
rily mean those who take under the Statute of Distribu-
tions.   And the reason of the judge does not therefore
seem to be so clear as he doubtless understood it to be.
How much more satisfactory is it to say that technical
words shall have their appropriate technical meaning
when there are no other words to give them a different
meaning.

The case in 1 Jones, Equity, is one often cited in
American cases by those adopting the rule of construc-
tion therein announced, and may be said to stand almost
in a paternal relation to said rule.  I do not assent to the
rule as thus enunciated by *Judge* Pearson.  The true
rule is that "lawful heirs" or "right heirs" are to be
construed in a technical sense, and according to their
primary meaning—in the absence of any words or cir-
cumstances mentioned or expressed in wills showing that
a different meaning was intended by the testator to be
attached to them.

In *Nelson* v. *Blue*, 63 N. C. 660, the judge delivering
the opinion of the court says :   "In a will of personalty
'my lawful heirs' means those who at the death of the
testatrix are entitled to distribution under the statute."

Is this necessarily so ?  The same remarks in reference
to the opinion of *Judge* Rodman are applicable which
I have made in reference to the opinion of *Judge* Pear-
son.

In the case of *Eddings* v. *Long*, 10 Ala. 203, Gold-
thwaite, *J.*, says :  "When the term 'heir' is used in
connection with the personal estate only, there is no con-
flict in the cases that it is to receive the construction of
next of kin."

It may or may not receive such construction, according to the terms used by a testator. And while it may often receive such a construction it may not always properly have such construction; and to say that there is no conflict in the cases on this subject is to assume much injudicial exposition. What did the testator mean by the use of the term "heir?" How is his meaning to be determined? These are the important questions to be considered in the exposition of wills.

This case was not argued before the judge making the decision, and it was doubtless based upon the rule announced in 1 Jones, Equity.

*Gibbons* v. *Fairlamb*, 26 Pa. 217, has been cited in the argument of this case. The testator in that case bequeathed to his daughter E $6,000, to be paid out of his personal estate within six months after his decease, and thereafter giving other legacies to his children, provided, that in case of the decease of any of the legatees before the expiration of the six months and before the payment of their legacies, the bequests of those so dying shall descend to and be equally divided among his or her heirs *or representatives*. These words "or representatives" are substitutional. "E died in the lifetime of the testator without issue. Her husband took out letters of administration on her estate; and it was held that the husband was the heir or *representative* of his wife, within the meaning of the will, and as such entitled to the legacy, but that the husband could not recover as her administrator, the legacy never having vested in the wife, but he might recover as the person substituted by the testator, in the event of her death. It was held in that case that the word "heir," in the description of the persons who are to take in the event of the death of the legatee, does not necessarily exclude the husband, it meaning such person as would be entitled to the money as the representative by the law of the State.

Lewis, *C. J.*, said, *inter alia:* " As the legacy never vested in E it seems clear that her husband cannot claim it in his character of administrator. If he take it, he must do so as the person *substituted* by the testator to take in case of her death." But surely this is not a case similar to the one before me. Dr. Grimshaw, as administrator of his wife, cannot claim the one-sixth part of the testator's estate, because that one-sixth part never vested in his wife. What she was entitled to for her life, and for her life only, was the income, dividends, and rents accruing on the said one-sixth part. That one-sixth part was bequeathed and devised " unto Sidney B. Mason in trust to pay the income, dividends, and rents accruing thereto (after deducting all reasonable expenses, . . . to her sister Ann Elizabeth Grimshaw; and immediately after her decease . . . then to convey the same to the right heirs of the said Ann Elizabeth Grimshaw, their heirs and assigns forever."

The testator did not substitute the administrator of Ann Elizabeth Grimshaw as the person to take upon her death. She had no such interest as would pass to her administrator for the purposes of administration. The right heirs of Ann Elizabeth Grimshaw were substituted by the testator to take, not income dividends and rents upon her death, but the one-sixth part of his estate by conveyance from the trustee. Neither did the testator by his will substitute the representatives of his daughter Ann Elizabeth Grimshaw to take the one-sixth part, but the heirs at law of the said Ann Elizabeth Grimshaw.

In the case of *Lord* v. *Bourne*, 63 Me. 368, it was decided that a man's widow takes nothing under a testamentary bequest to his heirs.

The word "heir" has a technical signification. Jacob defines it to be one who succeeds by descent to lands, tenements, and hereditaments, being an estate of inheritance.

Bouvier defines heir to be one born in lawful matrimony, who succeeds by descent, right of blood, and by act of God to lands, tenements, and hereditaments, being an estate of inheritance. None but God can make an heir.

"A bequest," says Roper on Legacies (vol. 1, chap. 2, § 3, pt. 2), "to the heirs of an individual, without addition or explanation, will belong to the next of kin."

"A devise or bequest to the next of kin vests the property in the persons (exclusive of the widow) who would take the personal estate in case of intestacy under the Statute of Distribution." 2 Jarm. Wills, 4th Am. ed. 28.

*A fortiori* a devise or bequest to right heirs would vest the property in the persons who are right heirs, to the exclusion of both the widow and the husband. If a widow be not of kin, neither is a husband. They are neither heirs of each other nor next of kin to each other.

In the case of *Lord* v. *Bourne*, the court says: "But is this term, as used in the residuary clause of the will, to be construed according to its technical meaning, or is it to receive a more enlarged signification? The general principle is that the word 'heir,' like other legal terms, when unexplained and uncontrolled by the context, must be interpreted according to its strict, technical import, in which sense it obviously designates the person or persons appointed by law to succeed to the real estate in question, in cases of intestacy. But this is only the *prima facie* construction, which may be repelled by evidence of a contrary intention of the testator." In that case the court further remarked: "There is nothing in the context of the testator's will which shows an intention to include his wife as a beneficiary under the residuary clause."

Is there anything in Baily's will which shows an intention to include the husband of his daughter as a beneficiary under his will?

The court further remarked in *Lord* v. *Bourne* that the counsel for the complainant had cited *Mace* v. *Cushman*, 45 Me. 250, to establish his theory that the widow is a legal heir of a deceased husband; but that case, says the court, has been overruled. Being overruled, it is of no authority.

This opinion has already been extended to an unreasonable length. It was argued elaborately by solicitors on both sides. Numerous cases were cited by them respectively in support of their contentions. It would be great labor, without corresponding profit, perhaps, to review at much greater length the authorities cited. I will refer to only one other case cited in behalf of the contention of Dr. Grimshaw. That is the case of *Richards* v. *Miller*, 62 Ill. 417.

In this case it was decided that the rule rigidly adhered to by the courts is that the words employed by a testator in his will will be presumed to have been used in their strict and primary sense, unless the context shows them to have been used in a different sense. When not thus explained their legal and technical meaning will be enforced. Thus, the word "heirs" unexplained by the context will be held to mean the persons appointed by law to succeed to the estate in case of intestacy. This case also decides that when gifts by will to heirs at law are made to them *simpliciter*, the persons to take and the proportions must be determined by the Statute of Descent and Distribution.

It is said that an heir is one who inherits or takes from another by descent, as distinguished from a devisee who takes by will. He is one upon whom the law casts the estate immediately upon the death of the owner.

When property is devised to the testator's heirs at law without other designation, it passes as in cases of intestacy. Suppose these principles be admitted, do they

control the meaning of the item contained in the will of Baily under review ?

That item had reference to the heirs at law, not of Baily himself, but as to the persons who should take as right heirs of his daughter Ann Elizabeth Grimshaw upon her decease.

The terms of his will were such as carefully excluded her husband, although not by name, from the benefits of his will on behalf of his daughter; and he provided therein that after her decease the one-sixth part of his estate, the income, dividends, and rents of which were given to his daughter for her life to be paid to her by a trustee named by him in his will, should go to the heirs at law of the daughter.

There is nothing in the context or any part of the will to show that by the words "right heirs" of his daughter, he meant any other person or persons than those who were technically such.

Dr. Grimshaw, as his wife's administrator, certainly could not have administered upon the one-sixth part of Baily's estate, because that sixth part was not of her goods and chattels, rights and credits, and never vested in her. At her decease all her interest therein ceased and determined, and no part thereof could pass to her administrator for the purpose of administration.

He was not of kin to his wife so that he could claim in that respect. He could have no marital rights therein, because the interest of his wife did not extend beyond her decease. The expression "her right heirs," therefore in the will of Baily, her father, must, I think, be construed to be *designata persona.*

The question in this, as in every similar case, is this : Is the person described, described as *persona designata* or not ? The question is, Who is the person to take ? It does not matter whether he is described as right heir, or

whether he belongs to the class of legal right heirs, if he is the person and the only person who can take, supposing the real and personal property are to go together as a blended fund. The moment you ascertain that the heir at law at the death of the testator or at the death of another is the person entitled to the real estate, you ascertain at the same moment, assuming the intention, that the same person is to take the personal estate as *persona designata.*

In all cases, whether the gift is immediate or in remainder; whether it is of personal estate or of a mixed fund of real and personal estate,—the question simply is whether there is such a description on the face of the will as amounts to a *designatio personæ* and enables you to give to a person not filling the character in which he would be entitled to take it by law the property which the testator bequeathed to him. But we are told in this case that the one-sixth part of Baily's estate under the terms of his will could not go to the right heirs of Mrs. Grimshaw, because it was personal estate and must be intended to go to her administrator.

But there was nothing to prevent Baily giving to the right heirs of Mrs. Grimshaw even by that description, if his will sufficiently designates them as the parties who were to take the one-sixth part of his estate or the whole of his personal estate.

As far, therefore, as the authorities go, with respect to personal estate, whether the gift be an immediate gift or whether it be a gift in remainder; whether it be a gift to the right heirs of the testator or to the right heirs of another,—the case appears to me beyond reasonable question rightly interpreted to give to the words the sense which the testator himself has impressed upon them,— that if he has given to the right heir, although the heir would not by law be the person to take that property, he

is the person who takes as *persona designata*.    This is, I
think, the true rule of construction; and this rule of
construction is supported by the case of *DeBeauvoir* v.
*DeBeauvoir*, 3 H. L. Cas. 523.

Thus far I have said nothing in respect to the devise
of the two burying lots.

This devise must be governed absolutely by the Act of
Assembly of this state, granting a charter to the Wil-
mington & Brandywine Cemetery Company, 10 Del.
Laws, 27.

It has not been contended by the solicitors for Grim-
shaw, if I understood their argument, that under the Act
referred to these burying lots were personal property.
If they were personal property, they certainly could not
pass under Baily's will to the administrator of Mrs. Grim-
shaw.

Baily was proprietor of these two lots.    He must have
had some property in them, and that property must have
been either real or personal.

The Act speaks of them as an estate; for it declares
that the "estate of the proprietors, respectively, in their
respective lots, shall be of qualified inheritance—that is
to say, the same shall descend as real estate to heirs; but
it shall not be levied on nor taken by execution nor any
process of law or equity; and it shall not be aliened or
devised so as to vest any right in the alienee or devisee
without the approval of the board of directors, and that
said lots shall be held subject to the constitution, by-laws,
and regulations of the said corporation."

True it is that it does not appear that any approval of
the devise by Baily was given to him in his lifetime, as
it could not reasonably be expected to be given to him,
nor to the right heirs of Mrs. Grimshaw; but Baily had a
certificate of the burial lots in the usual form and attested
in the usual manner, which the Act declared should be

valid and sufficient. And the Act declares that "the record and record books that have been kept and that shall be kept under the constitution aforesaid, by the secretary, shall be competent evidence in any court of law or equity. And copies of said records and of entries in said books by the secretary shall also be competent evidence in such courts."

It appears by said books or records that a certificate as aforesaid was issued to the said Baily for the two said burial lots. While I do not think, under the authorities I have hereinbefore cited, that it is very material to determine the character of these two burial lots, inasmuch as it was perfectly competent for Baily to give personal as well as real estate to the right heirs of his daughter Mrs. Grimshaw as *designata persona*, yet the Act of Assembly declaring that these lots, and Baily's estate therein as their proprietor, shall be of qualified inheritance, although they should not be aliened or devised so as to vest any right in the alienee or devisee without the approval of the board of directors of the cemetery, and as doubtless such approval would be given if asked in the absence of any reasonable cause to the contrary, the devise of them by Baily shows that it was his intention to dispose of them as a part of his real estate, for it does not appear that he intended to die intestate in any respect; and even if they passed to his heirs at law instead of his devisees, this mistake, if any there be, could not affect either the question of his property therein or of his intention thereto, and might, if I considered it more material, have some relation more or less important to the first rule laid down by Theobald in respect to bequests of personal property to heirs, which is "that a bequest of personalty to the right heirs or to the heirs at law, or the next heir of an individual, *prima facie* goes to such heir as *persona designata*, whether the bequest

be to the heirs of the testator or of a stranger; and this rule applies *a fortiori* to a mixed fund."

I am therefore of opinion, for the reasons hereinbefore stated, that the one equal sixth part of the rest, residue, and remainder of the estate of Joseph T. Baily which he gave, bequeathed, and devised unto Sidney B. Mason in trust to pay the income, dividends, and rents accruing thereto (after deducting all reasonable expenses) to her sister, the testator's daughter, Ann Elizabeth Grimshaw, for and during the term of her natural life, and immediately after the decease of the said Ann Elizabeth Grimshaw, to the right heirs of the said Ann Elizabeth Grimshaw, their heirs and assigns forever, passed to Joseph S. Baily, her brother, S. B. Mason, Edith B. Value, her sisters, and Joseph E. Baily and B. F. S. Baily, the defendants in this cause, and not to Arthur H. Grimshaw, the husband of said Ann Elizabeth Grimshaw, either as the right heir of his said wife or as her administrator; and that the said Sidney B. Mason, the trustee named in the said will of the said Joseph T. Baily, should now convey the same to the said brother, sisters, and nephews of the said Ann Elizabeth Grimshaw, as her right heirs, and not to the said Arthur H. Grimshaw, either as her right heir or administrator; and I so direct.