LUCY LORD, in equity,

*vs.*

EDWARD E. BOURNE *et al.*, executors.

*A man's widow takes nothing under a testamentary bequest to his heirs.*

The residuary clause in the will under which the plaintiff, widow of the testator, claims to recover, is as follows: "The reversion of the foregoing life estate given to my wife, and all the residue of my property, real and personal, I give to my legal heirs." *Held,*

I. That this clause is not void as a testamentary bequest over.

II. That the plaintiff is not entitled to any part of the residuary estate as reversioner, nor as one of the testator's legal heirs.

*Mace* v. *Cushman*, 45 Maine, 250, has been overruled.

A devise or bequest to the heirs of an individual will belong to the next of kin, and vests the property in the persons, (exclusive of the widow) who would take the personal estate, in case of intestacy, under the statute of distributions.

BILL IN EQUITY brought by the widow of the late Capt. Thomas Lord, who died, testate, in December, 1861, leaving no issue. The

Lord v. Bourne.

defendants were designated by him, and appointed by the probate court as executors of his will, which was dated December 19, 1857, by the second clause of which he gave to his wife, Lucy Lord, $1,000 in money, all the household furniture, plate, &c., &c., absolutely, and the use of the homestead, and the interest or income of $6,000, during her life. Then followed a series of special bequests. The thirteenth clause, the true construction of which this bill is brought to determine, was this: "The reversion of the foregoing life estate given to my wife, and all the residue of my property, real and personal, I give to my legal heirs."

Just before his death Capt. Lord estimated his whole property at $25,487. The estate was originally inventoried at $25,802.92, but the executors realized from it $30,278.24; of which there was left in their hands, after investing the $6,000 for the widow and paying the specific legacies, for distribution among his legal heirs, under the thirteenth item of the will, the sum of $3,503.17, which they paid and distributed to and among the mother, brothers, sisters and nephews of the decedent, according to the meaning and intent of the testator, as they understood it to be expressed by the terms of his will above quoted.

The complainant avers that the residuary clause is void, because it gives the residue the same direction that it would take, had nothing been said about it; and claims that by our statutes she is made an heir, and is, therefore, entitled to one-half of this balance of $3,503.17, under R. S., c. 75, § 9, regulating the descent of personal estate, and prays for a decree that the respondents pay her this proportion of the funds in their hands.

Judge Bourne testified that he wrote a former will for Capt. Lord three years before this one was made; that the "literature" of the present will was his (Bourne's); that Capt. Lord came to his (Bourne's) house, and desired to have a new will drafted, on account of the death of the testator's only child, which required a new disposition of the estate; that he brought with him the old will; that they examined the will, as probated, item by item, and those containing the provision for Mrs. Lord and the residuary

clause occasioned some perplexity in drawing to suit the draughts-man's purpose; that, after this thorough examination, he advised Capt. Lord to have Mr. Wallingford, an expert penman, make a handsome copy of it, which was done; and Mr. Wallingford's draught was executed and probated. Mr. Wallingford, called by the complainant, testified that he wrote the will in question, which was proved by his testimony, and admitted to probate in Cumberland county, because one of the executors, Mr. Bourne, was judge of probate in York county; that he wrote it at his office; that Capt. Lord brought him his former will, written by Judge Bourne, saying that the circumstances of his family were so changed that he desired to alter his will; that this will was then written by him (Wallingford) from a memorandum that Capt. Lord furnished; that, after finishing so much of it as related to the specific legacies, "there was a conversation about what should be done with the balance of the testator's property, if there should be any left after the legacies were all paid; whether it should be given to his wife, his heirs, or to some other person or persons. After thinking the matter over a few moments, the testator said, 'let it go to the heirs, then my wife will get her portion of it, of course,' or words to that effect."

*A. Wiggin,* for the complainant.

Had this will contained no residuary clause, the widow would have been entitled to one half of the residue of the personal estate. The burden, therefore, is upon the executors to show that their testator had an intention, made effective by the terms of the will, to deprive her of her statute rights. Had such been his purpose, however, he could have easily put the matter beyond controversy by the use of apt words. Of this, there is no evidence, unless found in the clause itself. The intention of the testator, if ascertainable, is the controlling principle. We say this was to let the residue go to those who would have it had no will been made; while our opponents say it should go to those who would have inherited the real estate in that event. Our theory is sus-

tained by the statement of the scrivener who wrote it for Capt. Lord, and who testifies to his express declaration to this effect.

The defendants' case, upon the construction of the residuary clause, is included in two propositions : First, that the word "heirs" is a technical term, meaning those to whom intestate real estate descends: Second, that technical words are presumed to be used in a technical sense.

The complainant's case, upon the construction of the residuary clause, is likewise included in two propositions, to wit:

I. That the word "heirs," though it may be used in a technical sense, is not so used in the vocabulary of ordinary life, but, as commonly employed, means those persons who by law take intestate estate, real or personal:

II. That, in the interpretation of a will, words, that have a general as well as a technical signification, must be given that general meaning, and not the restricted, artificial or technical one. A purely technical word has always one and the same meaning, such as "fee simple," "estate tail," and the like ; while many others that, in their restricted and technical sense have one meaning, have another in ordinary usage, such as "infant," "heir," &c. When such words are used, as in this case, by non-professional men, it is to be presumed that their ordinary purport, and not the technical one, was contemplated. It is true that "heirs" formerly meant those to whom the real estate of an intestate descended ; being the result of the legal fiction that a person could not be heir to personal estate. In ordinary life, who ever regards—how many have ever heard of—this artificial distinction ?

In the popular understanding, the person upon whom the law casts the personal estate is as much the heir as he upon whom it casts the realty ; indeed, both are taken by the same title, and held by the same right—namely, the statute. It is not blood, but the statute, that disposes of the estate, though the enactment may be based upon considerations of consanguinity. As Blackstone says : "he is the heir upon whom the law casts the estate." Where

the same section gives one portion of an intestate estate to the lineal descendants, or other blood relations, of the decedent, and the other portion to his widow, why are they not all equally heirs, since all take by force of the same statute provision, and thus only?

Such is the popular use of the word, as is shown by the definition substituted by Webster of the word "heir" in the later, revised editions of his unabridged dictionary for that contained in the earlier editions. He now defines it, primarily, as "one who receives, inherits, or is entitled to succeed to the possession of any property, after the death of its owner; one in whom the title to an estate vests on the death of the proprietor; one on whom the law bestows the title or property of another at the death of the latter." We may summarize our argument on this point thus: if a word has a general meaning, grammatically and properly employed in common and prevailing use, and also has a meaning that is restricted, artificial and technical;—whenever a person, whose pursuits do not familiarize him with the technical use of the word, employs it in a manner entirely consistent with its general signification, and there is no indication that a technical use of it is intended, the probability and presumption are that its general and not its technical sense was the one contemplated by the one using the word.

Mr. Wallingford's deposition shows that such was actually the fact as to this clause of the will. Jarman's seventeenth rule, that technical words are, presumptively, employed in their legal sense, applies only to words purely technical. This rule, as first formulated and laid down by Powell, related exclusively to the testamentary disposition of real estate, with reference to which there are many technical terms, especially as to devisory titles. The best English authorities have always denied the applicability of the rule to personal estate. Williams on Executors, 972–996; Kay, 375; *Parker* v. *Marchant*, 1 Phillim. C. C., 360.

Jarman's sixteenth rule is, that words in general use are to be taken in their ordinary and grammatical sense, unless the contrary be shown.

Lord *v.* Bourne.

The latest English cases, determined in its highest tribunal, have broken away from the narrow construction, and held that the words employed in a will are to have the natural, ordinary meaning which they have in the vocabulary of common life. *Jenkins* v. *Hughes*, 8 H. of Lords' Cas., 571; *Yonge* v. *Robertson*, 4 Macq., H. of Lords' Cas., 314; *Hall* v. *Warren*, 9 H. of Lords' Cas., 420. Of these cases Judge Redfield speaks approvingly in 1 Redfield on Wills, 429, note. So held in Maine, in *Cushman* v. *Mace*, 45 Maine, 250, which is decisive in our favor. Though the defence assume that this has been overruled, there is no evidence of this in the official reports of your decisions, where only the profession generally can look to ascertain how and what cases have been judicially determined.

Though we claim that Mrs. Lord is entitled to her half of the residue of the personalty under this thirteenth clause of the will, if valid, yet we deny its validity, and say that her half comes to her as from undevised estate; because "it is a well settled rule of law, that a devise to an heir of the same estate, in nature and quality, as that to which he would be entitled by descent, is void; in that case he takes by descent and not by purchase." *Parsons* v. *Winslow*, 6 Mass., 178–179; *Whitney* v. *Whitney*, 14 Mass., 90; *Ellis* v. *Page*, 7 Cush., 161; *Sears* v. *Russell*, 8 Gray, 93; *Sedgwick* v. *Minot*, 6 Allen, 171. The same rule applies to personal estate. Williams on Executors, 997; *Abbott* v. *Bradstreet*, 3 Allen, 587; *Smith* v. *Harrington*, 4 Allen, 566.

*Dane & Bourne*, for the respondents.

By this bill the widow of Thomas Lord seeks to obtain a legacy —or failing in that, a distributive share—out of his estate, in this court, as a court of equity jurisdiction. The executors have, so far, pursued the settlement of their testator's estate in the court of probate having jurisdiction; but if this court is of opinion that, in view of R. S., c. 65, §§ 27–31, it has equity jurisdiction, so as to bind both the executors and heirs by its decree, the respondents will not object to the form of remedy adopted, but desire a speedy

determination of the question whether or not Mrs. Lord has any such right as is claimed by her.

The husband's will containing a special provision for the wife, the fair presumption is that this was all he intended for her; if not satisfactory, she might have waived it; but instead of doing so, she elected to accept it, and has acquiesced in it for twelve years, and until the estate has been fully settled. She ought to be barred by her own laches, even if she ever had any valid claim. .

At any rate, if she now sets up a different claim, the burden must surely be upon her to maintain it. It is not the presumed intention of the testator merely—but that intention as expressed in the will—that is to control. So stringent is this rule that a positive enactment was required to give to a child whose name was accidentally omitted from his father's will, any portion of the estate. The complainant's solicitor has laid down two propositions to be maintained by him, and an equal number which he awards to us. While we by no means assent to his presentation of our case, and shall take the liberty to enlarge our foundations somewhat, we will first consider his own propositions, as he states them, when applied to the facts.

We take issue with him, then, on the popular signification of the word "heir;" and say that, in the general understanding of the term, it has this restricted sense, that it does not include the widow. We frequently hear, in common conversation, of contests arising between the widow and the heirs; that she has her thirds, and that the rest goes to the heirs, &c., &c.

*Mace* v. *Cushman*, 45 Maine, 250, upon which the complainant relies—and on the strength of which this bill was probably filed —was overruled soon after it was promulgated, more than a dozen years ago, in *Cushman*, appellant, v. *Mace*, never reported.

The evidence must satisfy the court that, though the mere penmanship of the will was the work of Mr. Wallingford, who is not a lawyer, yet its "literature" (as he expresses it) is Judge Bourne's, who carefully weighed each word of this clause till he made it suit his purpose of expressing the testator's intention. It is tech-

nical language, adopted by a legal mind, to effect a particular end by legal proceedings.

Mr. Wallingford evidently misrecollects the conversation (if any) had with Capt. Lord, so many years ago. As he now states it, it is absurd. Would Capt. Lord, who knew he had not disposed of the fee of his valuable homestead and of the $6,000 after his wife's death—comprising about half of his whole estate—say, "*if there is anything over*, let it go to the heirs," &c. And would he say, "then my wife will get her part," when it was to be distributed only after her death?

The truth is, the memorandum which Wallingford says Capt. Lord brought with him, was that made by Judge Bourne, and it was copied, *in totidem verbis*, into the will. Mr. Wallingford's services were required only because Mr. Bourne was judge of probate, as well as executor.

A bequest to one's heirs belongs to his next of kin. 1. Roper on Legacies, c. 2, §§ 3 & 6; 2 Jarman on Wills, (4 Am. ed.) 2 and 28.

After an extended and elaborate argument upon the meaning of this clause, and the construction to be given it, the complainant's solicitor turns round and declares it void!! After long and repeated denunciations of technicalities, he seeks to avoid this provision, by the merest technicality in the whole administration of the law!!

But the rule he invokes has never been applied to personal estate. *Dingley* v. *Dingley*, 5 Mass., 537; *Emerson* v. *Cutler*, 14 Pick., 115.

And it only applies to realty when the devisee would have under the will precisely the same estate that the law gives him; in which case, Coke says, he is deemed to be in under the latter as "the worthier title." Such is not the present case.

The will says, "the reversion of the foregoing life estate given to my wife. . . . . I give to my legal heirs." In other words, I give the estate, after the death of my wife, to my legal heirs; showing the testator could not have intended to include her; or

that she should take, as one of his heirs, after her death. The case of *Sears* v. *Russell*, 8 Gray, 96, cited by the complainant, says that to hold the testator's daughter entitled to an equitable estate during life and a vested right to a conveyance in fee simple upon her death would be manifestly absurd.

Taking Capt. Lord's own valuation of his property, it is evident that he made for his wife all the provision he deemed necessary; and that he expected that, together with the other specific legacies, it would exhaust his estate with the exception of the reversion of the real and personal estate of which his widow was to have the use during life; and this the thirteenth clause gives to his heirs. The balance that the inflation of values has created he did not anticipate when he made his will, nor the increase of the expense of living which has caused the provision to become less adequate than he imagined it would be when it was made.

DICKERSON, J. This is a bill in equity brought by the complainant, widow of Thomas Lord, formerly of Kennebunk, deceased, against the defendants as executors of the will of said Lord. The bill alleges that after the executors had paid and made over to the complainant all that was specifically devised and bequeathed to her, and all the other legacies, and debts of the testator and the funeral charges and expenses of administration, there remained in their hands a large amount of personal estate not specifically disposed of by the will. The complainant claims that the clause in the testator's will giving "all the residue" of his property to his "legal heirs," is void as a testamentary bequest, and that said "residue" can only be legally distributed in accordance with the provisions of the statutes by which she is entitled to have and receive one-half of all the personal estate of said "residue," and, further, that if said residuary clause is valid she is entitled to have and receive one-half of all the personal estate of the "residue" aforesaid.

The answer among other things denies that the residuary clause in the will is void as a testamentary disposition, and that the com-

Lord *v.* Bourne.

plainant is entitled by law to one-half, or any part, of said residue. The answer admits that there remained in the hands of the executors, after executing their trust in all other respects, for distribution among the heirs of the testator, three thousand five hundred and three dollars and seventeen cents, which they afterwards paid and distributed to and between the mother, brothers, sisters and nephews of said testator, according to the requirements of the will. The defendants further answer that they have fulfilled all the directions and requirements of. the will, administered upon all the estate, and duly rendered to the probate court, at proper times, full and true accounts touching said estate, and of their doings in the settlement thereof; and they pray to be hence dismissed with their costs.

The clause in the will calling for construction is as follows: "The reversion of the foregoing life estate given to my wife, and all the residue of my property, real and personal, I give to my legal heirs."

Though in the reverse order adopted by the learned counsel in their able and exhaustive arguments we will consider the questions raised by the bill in the order therein presented.

I. The validity of the residuary clause in the will.

The controlling principle in the construction of wills is to ascer tain and give effect to the intention of the testator. A will, in a testamentary sense, contains the solemnly recorded wishes of the testator upon matters of grave moment, and in which he feels a deep solicitude. Both the language and meaning of a will are the testator's; and in order to ascertain what the meaning is, it is oftentimes necessary to examine and compare clause by clause, or paragraph by paragraph in the light of the testator's standpoint. When the intention of the testator has been once ascertained, effect will be given to it, unless it is contrary to some positive rule of law.

The language of the clause of the will under consideration is too clear, explicit and intelligible to leave any doubt as to the testator's intention to give the reversion and residue of his real and

personal estate to his legal heirs ; there being nothing in the context to qualify or control this language he must be taken to mean what he said.

The rule of law invoked by the complainant to defeat the intention of the testator by rendering the residuary clause in the will void is of ancient origin, and though altered by statute 3 and 4 William 4, c. 106, has been recognized as the common law of Massachusetts, and has not been changed by statute in this State. *Sears et al.* v. *Russell et als.*, 8 Gray, 93.

That rule is, that a devise to an heir, of the same estate in nature and quality as that to which he would be entitled, is void; in such cases the heir takes by descent and not as purchaser.

One of the tests to try the applicability of this rule is to ascertain whether the heirs take an estate different in quantity or quality from that which they would have taken if no will had been made. *Ellis et als.* v. *Page et als.*, 7 Cush., 161.

If we apply this test in the case under consideration it is clear that the rule does not apply. Without any will, the heirs would have inherited the "residue" of the real estate in fee simple, subject to the widow's life estate in one-third part thereof; under the will, they take it by the same tenure, without that incumbrance. Thus the heirs receive a material advantage from the will. If the rule is applicable to personal property the difference is still greater, as the heirs get the whole of the residue of the personal property under the will, whereas under our statutes they would be entitled to only one-half of it, if no will had been made. But we think the rule does not apply to personal property. The reason assigned for it exists only in reference to real estate ; it is, that the title by descent is the worthier and the better title, by taking away the entry of those who might have a right to the land. Moreover, the exception to the rule which we have considered can have no application to personal estate, as the words quantity and quality, when used in their legal, technical sense, refer only to the nature and tenure of real estate. Further, personal property does not come within the rule because it is not the subject of inheritance in

the sense that real estate is.   Coke on Litt., 22, b.; *Whitney* v. *Whitney*, 14 Mass., 90; *Ellis et al.* v. *Page et als.*, ante; 1 Story's Equity, 542; *Emerson* v. *Cutler*, 14 Pick., 115; *Dingley* v. *Dingley*, 5 Mass., 537.

## II.  Who are "legal heirs."

The word heir has a technical signification, and we will first consider what its meaning is when used in a technical sense. "Heir," says Jacobs, "is he who succeeds by descent to lands, tenements, and hereditaments, being an estate of inheritance." Jacob's Law Dict., "Heir." Bouvier defines "heir" to be one born in lawful matrimony who succeeds by descent, right of blood, and by act of God to lands, tenements and hereditaments, being an estate of inheritance.   Bouvier Law Dict., "Heir."

"A bequest," says, 1 Roper on Legacies, c. 2, § 3, part 2, "to the heirs of an individual without addition or explanation will belong to the next of kin."

A devise or bequest to next of kin vests the property in the persons (exclusive of the widow) who would take the personal estate in case of intestacy, under the statute of distribution.   2 Jarman on Wills, 28, 4th Am. ed.

The distinction between widow and heir, or next of kin, was recognized in statute 21 Henry 8, c. 5, which provided that administration was to be granted to the widow or next of kin or both.   Under that statute the husband is not heir to the wife, nor she to him, and she takes administration not as next of kin, but as widow.   *Holt* v. *Watt*, 3 Vesey, 247.

So, under our statute, if administration is not taken out within the time limited by law, when a person dies leaving personal property, such property becomes the widow's, or if none, it goes to the next of kin; and administration of intestate estates is granted to the widow, husband or next of kin, &c.   R. S., c. 64, § 1.

It is obvious from these citations that the term "legal heirs," when used in a technical sense, does not include the widow.

But is this term, as used in the residuary clause of the will, to be construed according to its technical meaning, or is it to receive

a more enlarged signification? The general principle is that the word heir, like other legal terms, when unexplained and uncontrolled by the context, must be interpreted according to its strict, technical import, in which sense it obviously designates the person or persons appointed by law to succeed to the real estate in question, in cases of intestacy. 2 Jarman on Wills, 9. But this is only the *prima facie* construction, which may be repelled by evidence of a contrary intention of the testator. 1 Roper on Legacies, c. 2, § 6.

There is nothing in the context of the testator's will which shows an intention to include his wife as a beneficiary, under the residuary clause. Nor do we think that the evidence *aliunde* is sufficient to overcome the *prima facie* case established by the will, which excludes the complainant from taking as one of the testator's "legal heirs."

The residuary clause of the will was drawn by an eminent counsellor at law, after full consultation with the testator in regard to his purposes. With the knowledge and experience that counsellor had, he must be presumed to have used the term "legal heirs" in its technical sense; and he testifies that he remembers that he drew the clause containing these words to suit his (defendant's) purpose. That purpose undeniably was to use such language as would in law carry into effect the declared intention of the testator, in regard to the final disposition of the reversion and residue of his estate. This testimony of the solicitor is strongly corroborative of the theory that the technical meaning of the testator's language is in strict accordance with his actual intention. It would be establishing a dangerous precedent to allow the technical meaning of the will, thus fortified by parol evidence, to be overcome by the testimony of the scrivener who simply copied the will, at the suggestion of the solicitor who drew it, as to a remark made by the testator while he (Wallingford) was thus acting as a copyist. Such testimony, given nearly thirteen years after the occurrence to which it relates transpired, cannot be permitted to have the effect claimed by the counsel for the complainant. We

are entirely satisfied that the complainant is not entitled to any share of the residuary estate of the testator, either as his widow, or as one of his "legal heirs."

The counsel for the complainant has cited *Mace* v. *Cushman*, 45 Maine, 250, to establish his theory that the widow is a "legal heir" of her deceased husband. But that case has been overruled, though the report of the case in which it was overruled, through some mistake or inadvertence, was never printed.

> *Bill dismissed with costs*
> *for the respondent.*

APPLETON, C. J., WALTON, BARROWS, DANFORTH and VIRGIN, JJ., concurred.