WALTER L. MORSE, et als.    In Equity

*vs.*

WILLIAM R. BALLOU, et als.

Penobscot.    Opinion July 7, 1914.

*Construction. Equity. Husband and Wife. Intention of Testator. Legal Heirs. Residue. Trust Fund. Trustees. Widower. Will.*

1.  In construing the clause in question in the will of Llewellyn J. Morse, the court must presume that he used the words "legal heirs" in the sense that had been ascribed to them by usage and sanctioned by judicial decisions, unless a clear intention to use them in another sense is apparent from the context.

2.  If the presumption is that he used the words "legal heirs" in the sense that has been ascribed to them by usage and sanctioned by Judicial decisions, he did not intend that Fred D. Hill should take any part of the trust fund.

3.  Prior to the date of the will, and after the existing statute of distribution went into effect, it was held that the widow was not an heir of her husband, and if the widow is not an heir of her husband, then of course, a husband cannot be the heir of his wife, for they both take under the same statute.

4.  Husbands and wives, though they may be entitled under our statute to certain interests in the estate of each other, are not, properly speaking, heirs of each other. These rights, which the statutes give them respectively, they do not take as heirs.

On report.  Decree according to opinion.

This is a bill in equity brought to obtain the construction of the will of Llewellyn J. Morse.  The principal question is whether Fred D. Hill, the widower of Louisa Bridges Hill, is one of the legal heirs of his wife, within the meaning of a devise over to the legal heirs of the testator's granddaughter, a beneficiary of a trust created in said will and who died before the termination of the trust.  The respondents filed answers to said bill.  The case was reported to the Law Court upon bill, answers, copy of the will of Llewellyn J. Morse and the agreed stipulation that Louisa Bridges Hill was a granddaughter of Llewellyn J. Morse, and that the property devised consisted of both real estate and personal property; the Law Court to render such final judgment as the legal and equitable rights of the parties require.

The case is stated in the opinion.

*L. C. Stearns,* for plaintiffs.

*George H. Worster,* for William R. Ballou.

*Irish & George,* for Fred D. Hill and for Fred D. Hill, guardian.

*John E. Nelson,* guardian ad litem, pro se.

SITTING: SAVAGE, C. J., SPEAR, KING, HALEY, HANSON, PHILBROOK, JJ.

HALEY, J.  This is a bill in equity brought by Walter L. Morse, Carrie L. Higgins and Alfred J. Robinson, trustees under the will of Llewellyn J. Morse, against Fred D. Hill, the widower of Louisa Bridges Hill, William R. Ballou, Louise M. Hill, Mark Langdon Hill, Walter Hill and Marion Hill, children of said Louisa Bridges Hill, deceased, to obtain a construction of the will of said Llewellyn J. Morse, and is before this court upon report.

Llewellyn J. Morse died October 24, 1902, and his will was duly proved and allowed, and the plaintiffs qualified as executors and trustees.  Louisa Bridges Hill died testate March 22, 1907, leaving as survivors her husband, Fred D. Hill, and the other defendants, who were her children.  Her will, after disposing of a part of her estate, contained the following provision: "All the rest, residue and remainder of my estate, real, personal and mixed, of which I may die seized and possessed, or to which I may be entitled at the time of my decease, I desire to be distributed in accordance with the laws of the State of Maine, as they may exist at the time of my decease."

And in said will Fred D. Hill was appointed executor. There is no dispute as to the facts, and the court is asked to construe paragraph six of the will of said Llewellyn J. Morse, which reads as follows:

"All the rest residue and remainder of my estate and effects, wherever found and however situated, and of what nature and kind soever not hereinbefore disposed of, and not hereafter disposed of by my executors for the payment of proper charges against my estate and the legacies herein provided for, I give, bequeath and devise as follows, viz: One-third ($\frac{1}{3}$) of the same in fee to my daughter, Carrie L. Higgins, one-third ($\frac{1}{3}$) of the same in fee to my son, Walter L. Morse, and the remaining one-third ($\frac{1}{3}$) I give, bequeath and devise to Walter L. Morse, Carrie L. Higgins and Alfred J. Robinson above named, to have and to hold the same to the said Walter L., Carrie L. and Alfred J., their heirs, executors, administrators or assigns according to the nature and quality thereof respectively, in trust, for the following purposes and uses, viz: To invest, manage and control the same as they may deem best, and during the lifetime of my deceased daughter's husband, Willis B. Bridges, to pay over to the said Fannie Bridges Robinson and Louisa Bridges Hill the net annual income and profits of the said one-third ($\frac{1}{3}$) held in trust by them as aforesaid, said trust to continue until the death of the said Willis B. Bridges, and after his decease, then I order and direct said trustees to transfer and convey said one-third ($\frac{1}{3}$) to the said Fannie Bridges Robinson and Louisa Bridges Hill, each to share and share alike, and in case they, or either of them, are not living at the termination of said trust, then I order and direct said Trustees to transfer and convey said one-third ($\frac{1}{3}$) to the persons who would be at the time the legal heirs of the said Fannie Bridges Robinson and Louisa Bridges Hill, or either of them, such heirs to take the same share the said Fannie Bridges Robinson or Louisa Bridges Hill would have taken if living."

Louisa Bridges Hill, as stated above, deceased March 22, 1907, Willis B. Bridges deceased on the 30th day of April, 1913, and the said Fannie Bridges Robinson is now living.

The trust created by said paragraph six terminated by the death of said Willis B. Bridges. Fred D. Hill claims to be one of the legal heirs of his deceased wife, Louisa Bridges Hill, and that he is entitled to a share in that part of the estate of Llewellyn J. Morse which would have passed to said Louisa Bridges Hill, had she been living

at the termination of said trust, and the court is asked to construe that portion of paragraph six of said will which provides for the distribution of the one-third ($\frac{1}{3}$) of the trust fund that was to be paid over at the death of Willis B. Bridges to Fannie Bridges Robinson and Louisa Bridges Hill, and to determine who is entitled to that part of the principal of the trust fund to which said Louisa Bridges Hill would have been entitled had she been living at the termination of said trust.

No part of said trust fund passed by the will of Louisa Bridges Hill; that part which would have been payable to her at the termination of the trust, if she had been living, passed to her legal heirs as an executory devise under the will of Llewellyn J. Morse. *Buck* v. *Paine*, 75 Maine, 582; *Houghton* v. *Hughes*, 108 Maine, 233.

It is claimed that Fred D. Hill, the widower of Louisa Bridges Hill, is one of the legal heirs of his deceased wife within the meaning of the provisions of the will of Llewellyn J. Morse, and that he is entitled to share in that part of the estate which would have passed to her had she been living at the termination of said trust.

It is the opinion of the court that that claim cannot prevail, for two reasons; first, that such was not the intention of Llewellyn J. Morse, as shown by his will; second, because a widower is not a legal heir of his deceased wife.

First. The will of Llewellyn J. Morse is dated April 24, 1901, and in construing the clause in question the court must presume that he used the words "legal heirs" in the sense that had been ascribed to them by usage and sanctioned by judicial decisions, unless a clear intention to use them in another sense is apparent from the context. *Houghton* v. *Hughes*, supra. And if we presume he used the words "legal heirs" in the sense that has been ascribed to them by usage and sanctioned by judicial decisions, then he did not intend that Fred D. Hill should take any part of the trust fund because, for many years prior to the execution of his will the words "legal heirs" had been held by usage and judicial decisions in this State not to include husband and wife, and, as said in *Houghton* v. *Hughes*, supra, "his will was made and executed in Maine. It is not probable that he was familiar with the laws of any other State, but he is presumed to know the laws of Maine, and it should be assumed, we think, that he used the words 'heirs at law' in his will in the sense which

those words had according to the laws of the State of Maine, and as judicially construed by the courts of Maine, there being nothing in the language used which repels or controls such conclusion." Prior to the writing of the will, and after the existing statute of distribution went into effect, it was held in *Golder* v. *Golder*, 95 Maine, 259, that the widow was not an heir of her husband, and, if the widow is not an heir of her husband, then, of course, a husband cannot be the heir of his wife, for they both take under the same statute. Before the present statute of distribution took effect, it was held in *Buck* v. *Paine*, 75 Maine, 582; *Clark* v. *Hilton*, 75 Maine, 426; *Lord* v. *Bourne*, 63 Maine, 368, that husbands and wives were not heirs of each other, and we must assume that the testator wrote into his will the words "legal heirs" in the sense in which they had been judicially construed by the decisions of this court. We must assume that he selected the words "legal heirs" with the intention of excluding Fred D. Hill from participation in the distribution of the trust fund, because that was the sense in which this court had construed those words, it being a cardinal principle in the construction of wills to ascertain the intent of the testator, and as it is apparent from the language used, as the words had been construed by this court, that he intended only the heirs by blood of Louisa Bridges Hill should share in the distribution of the trust fund which she would have taken had she been living at the termination of said trust.

Second. It is urged that the widower is a legal heir of his deceased wife. "The primary meaning in law of the word 'heirs' is the persons related to one by blood, who would take his real estate if he died intestate, and the word embraces none not thus related." *Tillman* v. *Davis, et al.*, 95 N. Y., 17. And it has been held by this court many times, when the question has arisen for consideration, that husbands and wives are not heirs of each other. In *Lord* v. *Bourne*, supra, decided in 1873, the court, after careful consideration, held that the term 'legal heirs' did not include the widow, and the opinion states that there had been a prior decision to the same effect, that through mistake or inadvertance had not been printed. In *Clark* v. *Hilton*, 75 Maine, 426, the court said: "He (the widower) is not one of the heirs of his wife. Husbands and wives, though they may be entitled under our statute to certain interests in the estate of each other are not, properly speaking, heirs of each other. The rights which the statute give them respectively they do not

take as heirs." In *Buck* v. *Paine*, supra, the court approved the doctrine of *Lord* v. *Bourne*, as it did in *Kenniston* v. *Adams*, 80 Maine, 295, and the case of *Lord* v. *Bourne*, was quoted with approval in the elaborate opinion in *Mason* v. *Bailey*, 6 Del., 129, and also approved in *Wilkins* v. *Ordway*, 59 N. H., 378, where the court said: "But husband and wife are nowhere included with 'heirs' or 'next of kin' in the statutes. These terms, in their proper and legal sense and acceptance, have reference to relationship by blood; and in *Richardson* v. *Morton*, 55 N. H., 45, it was held that the widow of a devisee cannot take as heir of her husband, under a clause giving certain bequests to him and his heirs, unless it is apparent from the will that the word 'heirs' is not used in its ordinary sense."

In *Golder* v. *Golder*, supra, decided in 1901, after the present statute of distribution was enacted, the question whether the wife was an heir of her husband was again considered by the court, and it was held, page 262, "the statute does not change the status of the widow with reference to her deceased husbands estate. It enlarges her interest by giving her an estate in fee instead of an estate for life. She still takes not as heir, but as widow."

In 1907, in *Herrick* v. *Low*, 103 Maine, 253, and in *Houghton* v. *Hughes*, supra, the court approved the rule laid down in *Lord* v. *Bourne*, supra. In *Tillman* v. *Davis, et al.*, supra, the court reviewed many of the decisions of this country and of England and ruled that the widow was not an heir of her husband, and stated: "The primary object of all construction of wills is, in each case, to ascertain the intention of the testator, and to give effect to that within the rules of law. The words 'heirs,' 'next of kin' may be so used in the association with other language, and under such circumstances as show an intention to include other than blood relatives. But in the absence of anything showing a different intention they must be held to mean what they primarily import, relatives in blood. In this State they have not by legal usage, or general custom, come to mean anything else; and there is nothing in this will, and there were no circumstances connected with the testatrix or her estate to indicate that she intended by the words 'heirs' a broader significance."

We think an examination of the above cases, and cases cited in the opinion, demonstrate that the rule followed in this State for many years, that husbands and wives are not heirs of each other, is

the right rule and approved by most of the authorities that have discussed it. It is easily applied and understood, and will generally, if not universally, be more likely to give effect to the real intent of testators to so hold.

The trustees are instructed that Fred D. Hill is not a legal heir of his wife, Louisa Bridges Hill, and is entitled to no part of the trust fund mentioned in section six of said will, which would have gone to Louisa Bridges Hill if she had been living at the termination of said trust, viz.: at the death of Willis B. Bridges; that the part of said trust fund that would have gone to said Louisa Bridges Hill, if living at the death of Willis B. Bridges, should be paid to the defendants, William R. Ballou, Louise M. Hill, Mark Langdon Hill, Walter Hill and Marian Hill, the children and legal heirs of said Louisa Bridges Hill. Decree in accordance with this opinion, the question of costs and expenses to be settled by the justice signing the decree.

*Decree as above.*