NATHAN B. LEWIS, *Ex'r.*, *vs.* MARY E. ARNOLD *et·als.*

FEBRUARY 26, 1919.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.,

*(1)   Wills.   Next of Kin.*

Under a clause of a will, "I give devise and bequeath all my property and estate, both real and personal, and wherever situated, to my next of kin and heirs at law, to be divided and distributed among them in the same proportions and shares provided for the descent and distribution of intestate estates of deceased persons under the laws of the State of Rhode Island," the words *"next of kin"* are to be construed in their strict and technical sense and the reference·to the laws merely indicates that the personal estate is to be distributed in the same proportions as the statute provides for the distribution of that portion of an intestate's estate, whatever it may be, which by the law belongs to the *"next of kin,"* and therefore the *widow* is not included as one of the *"next of kin."*

*(2)   Wills.   Heirs at Law.*

Under the above clause, the words *"heirs at law,"* should be taken in their strict technical sense, as including all the persons answering that description, the reference in the will to the division of the real estate simply pointing out the rule of such division among the heirs.

The language employed negatives any intention that the real estate should go as ancestral estate but plainly includes in the term "heirs" both paternal and maternal kindred.

BILL IN EQUITY by executor for construction of will. Certified under Gen. Laws, 1909, cap. 289. § 35.

BAKER, J.   This is a bill in which the complainant as executor asks for the construction of a portion of the will of Charles D. Chapman, late of Westerly, in this State, deceased.   It was certified to this court under Section 35 of Chapter 289 of the General Laws.   The case is heard on the allegations of fact contained in the bill, all of which are undisputed.

By the bill it appears that Charles D. Chapman died January 26, 1916, leaving a will, dated December 9, 1913, which has been duly admitted to probate, and of which the complainant is the duly appointed and qualified executor. At his death the testator left a widow, Ella M. Chapman, but left no children, or descendants of children, mother,

father, grandfather, grandmother, brothers or sisters. Of his paternal kindred he left about a dozen cousins, and on the maternal side about three times as many cousins and one uncle, the cousins on both sides being chiefly in the second and third degree of relationship. They and the widow are the respondents in the case.

It also appears that the testator and his widow were married December 16, 1875; that for about eleven years next preceding his death they had lived separate and apart from each other; that on June 3, 1913, she filed in the Superior Court a petition for divorce from the testator; that from and after July 15, 1913, the Superior Court ordered the testator to pay his wife $20 a week for her support *pendente lite*, and that in compliance with such order the testator paid said sum until the time of his death, up to that time the petition for divorce not having been heard.

At his decease the testator owned real estate in Westerly of the estimated value of $15,000 and personal estate of the appraised value of $16,606.01, of which after payment of the testator's indebtedness the executor now has in his possession about $11,800 for the payment of the expenses of administration and for distribution to those entitled thereto under the will. In addition the complainant represents that as agent for the owners of said real estate he has collected the rents thereof, of which after payment of taxes and other expenses he now has in his possession about $300. All of said real estate came to the testator by devise from his father Charles P. Chapman.

The testator's will after directing the payment of his just debts and funeral expenses, contained the following paragraph, namely: "Second;—Subject to the foregoing provision of my will, I give, devise and bequeath all my property and estate, both real and personal, and wherever situated, to my next of kin and heirs at law, to be divided and distributed among them in the same proportions and shares provided for the descent and distribution of intestate

estates of deceased persons under the laws of the State of Rhode Island."

The executor asks instructions in the form of three questions, as to the construction to be given said paragraph, as follows:

1. "Is the said Ella M. Chapman, as the surviving widow of Charles D. Chapman, entitled to any part of said personal property under the provisions of said will of Charles D. Chapman?"

2. "Is the title to said real estate in both the paternal and maternal kindred of said Charles D. Chapman, and does said sum of money, being rents of said real estate, belong in equal moieties to the paternal and maternal kindred of said Charles D. Chapman?"

3. "Or is the title to said real estate in the paternal kindred only and does said sum of money belong solely to the paternal kindred of said Charles D. Chapman?"

Some forty years ago a court of last resort distinguished for its ability in a reported opinion made the following statement, which may be accepted as true both as history and as prophecy: "Upwards of two hundred years ago Lord Coke made the observation, which is nearly as true now as it was then, that 'wills and the construction of them do more perplex a man than any other learning; and, to make a certain construction of them, this *excedit jurisprudentum artem.*' (*Roberts* v. *Roberts,* 2 Bulst., 123, 130.) Since that time the construction of wills has continued to perplex the courts, and not much has been done by the evolution of rules to aid them. Such is the multifarious and complex nature of human affairs, and the uncertainty of language, and such the carelessness and inattention with which wills will frequently be drawn and executed, that the 'certain construction' of them will probably be no less difficult in the future than it has been in the past." *Keteltas* v. *Keteltas et al.,* 72 N. Y. 312, 314.

In the present case the respondent, Ella M. Chapman, claims that under the second paragraph of the will of Charles

D. Chapman she is entitled to receive one half of the testator's personal estate, and the other respondents claim that, she is entitled to none of it.

Inasmuch as the testator devises and bequeaths all his property and estate, both real and personal to his "next of kin and heirs at law," and as his widow claims no interest in the real estate by virtue of the will, her claim to share in the personal estate must rest upon the testator's intention to include her in the expression "next of kin."

In *Mowry* v. *Taft*, 36 R. I. 427, 435, it was held that the husband "is not of the 'kindred' or next of kin of his deceased wife, and so cannot take in this respect under the statute." Mrs. Chapman's counsel concedes that the words *next of kin* as employed at the common law and generally imply blood relationship and cites authorities to the effect that "the use of the term 'next of kin' does not ordinarily include the surviving spouse of the testator" (Thompson on Wills, p. 147) and "a bequest by a husband to his 'next of kin' would not *prima facie* include his wife as a beneficiary." (Alexander on Wills, Vol. 2, 1264.) The author last named goes on to say, "However, the court will inspect the entire will, and if from the whole there is manifested an intention to include the husband or wife under the term 'next of kin' 'relatives' or the like, the intention will be given effect." In other words, the manifested intention of the testator must always prevail, and technical words may be given an enlarged meaning to accord with such intention. The widow claims that this intention is manifest in the words of the will providing that the property is "to be divided and distributed among them in the same proportions and shares provided for the descent and distribution of intestate estates of deceased persons under the laws of the State of Rhode Island." Attention is called to Section 9 of Chapter 316 of the General Laws regulating the distribution of intestate estates, by which a widow receives one third or one half of said personal estate, according to the fact of the deceased leaving issue or not, and the residue thereof is "distributed

among the heirs of the intestate in the same manner real estates descend and pass by this chapter." The argument is that it is not possible to distribute the personal estate among the next of kin in the same proportions and shares as provided by the statute of distribution without including the widow as of the next of kin; that to interpret the paragraph as the other respondents urge, it would be interpreted as if the paragraph contained the additional words "as if I had died unmarried"; that in the dilemma thus presented it is more reasonable to decide that the testator's intention was that the words next of kin should be taken as having a broad and untechnical meaning, and as including the widow. The argument is certainly not without plausibility. Her counsel cites no case as supporting his view, and says that he has been unable to find a case exactly like the one at bar.

But do the words of the will as to the division and distribution of the testator's property and estate according to the statutes for the descent and distribution thereof indicate anything more than a rule to be followed in such distribution? Without such reference it might be claimed that it was to be shared *per capita.* Does the reference mean more than this, that the beneficiaries are to take *per stirpes* and in the same shares and proportions as obtain in the distribution of personal property among the "heirs" of an intestate?

In *Luce* v. *Dunham et al.*, 69 N. Y. 36, the question raised was almost identical and on a somewhat similar state of facts. A testator died leaving a widow and four sisters, three of them half sisters, but no children. They were all named as beneficiaries in his will. The sixth clause of the will reads as follows: "Sixth. All the rest, residue and remainder of my estate, real and personal, present and hereafter to be acquired, and wherever situated, I give, devise and bequeath, and do desire and will that the same shall be divided among my heirs and next of kin in the same manner as it would be by the laws of the State of New York had I

died intestate." The widow claimed that under this clause she was entitled to participate in the distribution of the residuary estate, which was all personalty, that is, that she was entitled to one half thereof, which claim was upheld by the Surrogate and the General Term of the Supreme Court.

In the opinion of the Court of Appeals (69 N. Y. *supra*), on page 41, this appears: "The devise and bequest are of 'all the rest, residue and remainder of my estate, real and personal, present and hereafter to be acquired, and wherever situated.' Where such a disposition is followed by the words 'devise and bequeath,' and a direction that the property be divided among the testator's heirs and next of kin, according to law, as in case of intestacy; there can be no inference that the testator intended to use the words '*heirs*' and 'next of kin' in any other than their legal sense. The language is perfectly appropriate and technically accurate, and the meaning of the draughtsman is plain. The word 'heirs' relates to the realty devised, and the words 'next of kin' relate to the personalty bequeathed, and there is no ground for misapplying these expressions. If the clause did not mention real estate, but bequeathed personal property to heirs or heirs and next of kin, or if it gave real and personal estate to heirs, without mentioning next of kin, the question of the intention of the testator might arise, but here there is no obscurity in the language used, and the subjects of the devise and bequests are such that the technical terms used are accurately applicable to them distributively. In such a case they cannot be construed in any other than their strict and primary sense."; and on page 43 the Court said: "The learned surrogate, in his able opinion, rejected the argument based upon the use of the word 'heirs,' but held, in substance, that the language, not being simply that the personalty be distributed among the testator's next of kin, but being that it should be distributed among his next of kin 'in the same manner as it would be by the laws of the State of New York, had I died intestate,' these latter expressions controlled the words

'next of kin,' and showed that they were intended to embrace all who would be distributees under the statute, and that the will should be construed as though the testator had directed, generally, that his residuary estate be distributed according to the statute as in case of intestacy.

"This same position was taken and argued by counsel, with much force, in the case of *Murdock* v. *Ward* (67 N. Y. 387), and it was urged that a distribution could not be made according to the statute without including the widow. Some of the judges, while the case was under consideration in this court, were strongly inclined to maintain the position contended for, but a full examination of the authorities constrained them to abandon it, and it was finally held that where the bequest was to the next of kin, the addition of the words, 'according to the statute as in case of intestacy,' was not sufficient to enlarge the class of legatees so as to include the widow.

"A provision directing generally that on the decease of a testator, his personal property be distributed as provided by statute in case of intestacy, would, of course, entitle the widow to be included in the distribution, though not specially mentioned, but where the distributees are, by the terms of the will, confined to the next of kin of the testator, effect must be given to that restriction, and the reference to the statute, or to the laws, merely affords the rule of distribution among the next of kin as if there were no widow."

The judgment of the court below was accordingly reversed. See also *Tillman* v. *Davis*, 95 N. Y. 17; *Murdock* v. *Ward*, *supra*, and *Keteltas* v. *Keteltas et al.*, *supra*.

(1)

In the present case we are of the opinion that the words "next of kin" are to be construed in their strict and technical sense, that the reference to the laws merely indicates that the personal estate is to be distributed in the same proportions as the statute provides for the distribution of that portion of an intestate's estate, whatever it may be, which by law belongs to the "next of kin," and, therefore,

that the widow, Ella M. Chapman, is not included as one of the "next of kin" of the testator.

While the widow has urged that the words "my next of kin" should not be taken in their strict technical sense, but in an enlarged and so-called "every day meaning," the paternal kindred urge that the words "my . . . heirs at law" should not be construed in their strict technical sense, as including all the heirs of the testator, but should be given a restricted meaning, as including the heirs only (2) of the blood of the testator's paternal ancestry, and this claim is based on the fact that the real estate in question is ancestral as well as on the language of the will as to division and distribution of the property in the "same proportions and shares" as provided by the laws relative to the descent and distribution of intestate estates. We are unable to discover any stronger evidence of the intention of the testator to restrict the meaning of the words "heirs at law" than we found as indicating his purpose to give the words "next of kin" an enlarged meaning.

We are of the opinion, therefore, that the testator intended the words "heirs at law" to be taken in their strict technical sense as including all the persons answering that description, and that the reference in the will to the division of the real estate simply points out the rule of such division among the heirs. The testator had the right to dispose by will of his real estate—ancestral included—as he saw fit. Section 6 of Chapter 316 of the General Laws provides that ancestral estate of an intestate dying without children "shall go to the kin next to the intestate of the blood of the person from whom such estate came," but does not undertake to point out who are to be considered as constituting "the kin next to the intestate" or in what proportions they are to take the property. This is to be determined by the general canons of descent as set forth in the preceding sections of Chapter 316. See *Smith* v. *Smith*, 4 R. I. 1; *Pierce* v. *Pierce*, 14 R. I. 514; *Arnold* v. *O'Connor*, 37 R. I. 557. If the testator intended his real estate to go as ancestral

estate, it was easy for him to make that intention clear by confining the devise to his paternal kindred; or, if he had said that his real estate was to go as if he had died intestate, the present claim of the paternal kindred would have support. He employs language, however, which negatives such intention by devising his real estate to the persons answering the description of his "heirs at law" at the time of his death and provides for its division among them according to the canons of descent stated in our laws, and thus plainly, as we think, included in the term "heirs" both paternal and maternal kindred.

In accordance with what is above stated, we answer question 1 in the negative. Answering questions 2 and 3 together we decide that the title to the real estate is in both the paternal and maternal kindred of said Charles D. Chapman,—that is, an equal moiety is in each of the two lines of kindred, and that the moneys held by the complainant as the net rents of the real estate of the deceased belong one half to the paternal kindred and the other half to the maternal kindred.

A decree in accordance with this opinion may be presented on Monday, March 3, 1919, at 10 o'clock in the forenoon in order that the same may be approved by this court and ordered to be entered in the Superior Court.

*Benjamin W. Grim*, for complainant.

*Fitzgerald & Higgins* (*William H. Camfield* of counsel), for respondent Ella M. Chapman.

*Herbert W. Rathbun*, of Westerly, *Stone & Lovejoy*, for various other respondents.