WILLIAM S. LINNELL, ET AL.,
TRUSTEES UNDER THE WILL OF
GEORGE F. GOODSPEED, IN EQUITY
*vs.*
DOROTHY I. SMITH, INEZ A. GOODSPEED DAVIS,
FRANCES GOODSPEED RUBIN AND ELINOR GOODSPEED

Franklin.   Opinion, December 5, 1957.

*Linnell, Perkins, Thompson,*
*Hinckley & Thaxter,* for plaintiff.

*Verrill, Dana, Walker,*
*Philbrick & Whitehouse,* for Dorothy I. Smith.
*Hutchinson, Pierce, Atwood & Allen,*
                    for Inez A. Goodspeed Davis, et al.

SITTING: WILLIAMSON, C. J., WEBBER, BELIVEAU, TAPLEY,
SULLIVAN, DUBORD, JJ.

WEBBER, J. On report. This was a bill in equity brought by the Trustees named in the will of the late George F. Goodspeed seeking instructions as to the distribution of certain of the trust funds. The facts are not in dispute and are fully covered by the bill and answer.

The testator died in 1942, leaving a will dated January 29, 1934. Three codicils, the last dated June 24, 1942, have no bearing on the issues raised here, all of which stem from provisions in the original will.

Mr. Goodspeed was survived by his wife, the defendant Inez A. Goodspeed Davis, by a son, George F. Goodspeed, Jr., now deceased, and two daughters, Elinor Goodspeed and Frances Goodspeed Rubin, both defendants in this proceeding.

George F. Goodspeed, Jr. was born October 16, 1923 and died at the age of twenty-five, leaving no issue but survived by his wife, the defendant Dorothy I. Smith. It will be noted that he was eleven years old when his father's will was executed. His untimely death on August 23, 1949 gives rise to the immediate problems presented here. The will, after making the usual provision for debts and funeral expenses, provides a number of specific bequests and devises. Item Fourteenth of the will disposes of the residuum and establishes the trusts in question. 14(c) establishes a $100,000 trust fund with income benefits for life for each of the testator's surviving children, remainder as to each trust at the death of the beneficiary to be "paid to his legal heirs according to the law for descent of intestate estates." 14(d) 2 establishes a trust for each surviving child to be distributed as each child attains age 30, "provided that, if any beneficiary dies before reaching the age of 30 years, his trust shall terminate and the entire net remainder shall be paid to his legal heirs according to the laws at that time governing the descent of intestate estates."

The trustees hold substantial sums comprising principal and accumulated income which must be distributed as a re-

sult of the death of George F. Goodspeed, Jr. to the persons entitled to take the same under the provisions of 14(c) and 14(d) 2 above. Dorothy I. Smith asserts a claim to one-half the remainder as widow of George F. Goodspeed, Jr. Her position, briefly stated, is that the phrase "legal heirs according to the laws at that time governing the descent of intestate estates" creates a class of takers established by the statute governing descent and that the widow is one of that class. The statute in effect at the death of George F. Goodspeed, Jr. (R. S. 1944, Chap. 156, Sec. 1) provided in part: "The real estate of a person deceased intestate * * * descends according to the following rules: I. If he leaves a widow and issue, 1/3 to the widow. If no issue, $\frac{1}{2}$ to the widow."

No doubt exists in the mind of either counsel in this case that if the testator had used the words "legal heirs" without more, the spouse could not take. That such is the law in Maine has long been established. *Lord* v. *Bourne,* 63 Me. 368; *Clarke* v. *Hilton,* 75 Me. 426. Reaffirming the rule, *Golder* v. *Golder,* 95 Me. 259, 262, stated that even though the statute had enlarged the widow's interest from a life estate to an estate in fee, "she still takes not as heir, but as widow." *Morse* v. *Ballou,* 112 Me. 124; *Trott* v. *Kendall,* 125 Me. 85.

When, however, there is added to the words "legal heirs" a reference to the statute governing descent, there is a conflict of opinion as to whether a testator has thereby imparted to those words a meaning broader than their narrow and technical sense. Professor A. James Casner, a recognized authority in this field, stated in 53 Harvard Law Review 207, 221:

"Frequently in these cases there is a specific reference to the law of intestacy in connection with the gift to the described group. This fact, as we have seen, causes the specified statute to apply when otherwise the jurisdiction would have ascer-

tained the takers without reference to any statute. In the opinion of the writer such evidence ought to remove all doubt of the intention of the testator to provide for an intestate distribution including the spouse, where otherwise she or he is presumptively excluded, and some courts agree; but other courts have regarded the reference to the statute as mere surplusage."

See also American Law of Property, Vol. V, Sec. 22.59, page 427, and cases cited.

In *Van Dyke* v. *Van Dyke* (1928), 223 Ky. 49, 2 S. W. (2nd) 1057, the court held that although the spouse was not an heir, the addition of the words "in accordance with the law laid down by the statutes of the State of Kentucky" broadened the meaning of "heirs" as used by the testator to include the spouse as one of those who would take under the statute.

The words construed by the court in *Re Garrett's Estate* (1915), 249 Pa. 249, 94 A. 927, were "to his (the legatee's) next of kin in accordance with the intestate laws of the State of Pennsylvania." Recognizing that a husband is not one of the "next of kin" of his wife, the court nevertheless deemed that the words must yield to the controlling reference to the statute under which the husband would take. The court said: "The words 'next of kin' are to be regarded as superfluous, or as having been used by the testatrix in their popular sense, meaning those who are entitled to the personal estate of a decedent under the statute of distribution."

*Williams* v. *Fulton* (1954), 4 Ill. (2nd) 524, 123 N. E. (2nd) 495, interpreting similar language cited *Re Garrett's Estate, supra,* and followed it.

On the other hand, some courts have treated the reference to the statute as merely an indication of the intended method of distribution among the "legal heirs" or "next of kin,"

preserving for those words their technical meaning. Upon this reasoning, of course, the spouse does not take.

Without finding any necessity to distinguish *Re Garrett's Estate, supra,* the Pennsylvania court excluded the spouse in *Re Stoler's Estate* (1928), 293 Pa. 433, 143 A. 121. In that case the testator left an estate for life to his wife, then to his next of kin "to be divided among them in accordance with the provisions of the intestate laws of Pennsylvania." The court laid great stress on the words "to be divided among them" as indicating a rule of distribution among takers related by blood. Moreover, it was apparently influenced by the fact (as other courts have been) that the wife was expressly provided for by the testator when he made her beneficiary of the life estate.

The Rhode Island court construed the words "to my next of kin and heirs at law, to be divided and distributed among them in the same proportions and shares provided for the descent and distribution of intestate estates of deceased persons under the laws of the State of Rhode Island" as excluding the spouse. The court treated the reference to the statute as merely pointing out the rule of division among heirs and next of kin giving to those words their technical sense. *Lewis* v. *Arnold* (1919), 42 R. I. 94, 105 A. 568.

Until in 1938 a spouse was made a statutory heir, the New York court consistently refused to include the spouse as a taker when language similar to that in the will before us was employed by the testator. *Murdock* v. *Ward* (1876), 67 N. Y. 387; *Matter of Devoe* (1902), 171 N. Y. 281, 63 N. E. 1102.

Whatever disposition we might otherwise have to be persuaded by the reasoning of those who have treated a reference to the statute as an enlargement of the phrase "legal heirs" is effectively overcome by the language employed by our own court in *McCarthy* v. *Walsh,* 123 Me. 157. In that case, the will provided that the remainder "shall be disposed

of according to the laws of inheritance of the State of Maine in force at date hereof." The estate of the testator's widow claimed a vested remainder in her as one of the persons made a taker by statute. The opinion by Mr. Justice Morrill distinguished "inheritance" and "descent" and after pointing out that one who "inherits" takes as an "heir," held that the widow, who takes as "widow" and not as "heir" of her husband, was excluded. By dictum the opinion clearly indicated that if the language had been "shall be disposed of according to the laws of descent of the State of Maine in force at date hereof," the widow would have been included as one of the persons to whom property descends by statute. The opinion, however, went further. It cited with evident approval a decision filed by the late Chief Justice Savage in the case of *Clark* v. *Dixon et al.* arising in equity in Androscoggin County. Apparently this decision was never appealed and never reviewed by the Law Court. The will in that case provided that at the termination of a trust for the benefit of the husband of the testatrix, the trustee should "then divide said trust fund then existing among my then living heirs according to the laws of descent in this state." This language is in all material respects indistinguishable from that used by Mr. Goodspeed, yet the holding in the *Clark* case was that the controlling words were "living heirs" and that the class was not enlarged by reference to the statute so as to include the spouse. It is argued here that the underlying reason in the *Clark* case for excluding the spouse was that he had already been fully provided for by being made beneficiary of the first trust estate, and therefore that it would be unreasonable to assume that the testatrix intended to include her husband as an "heir." We have examined the decision in the *Clark* case and neither there nor in the discussion of it in *McCarthy* do we find any suggestion that such reasoning was followed or even considered. Cf. *Strout, Tr.* v. *Little River Bank & Trust Co.,*

149 Me. 181 as to language of the will, reasoning and holding.

We cannot minimize the effect of the holding and dicta in *McCarthy*. We are called upon to ascertain the intent of the testator from the language he used in his will. He is presumed to know how the language he employed had previously been interpreted by the court. When almost the identical words had been treated by the court as having a certain meaning, even though only by dictum, a testator using those words subsequently may properly be considered to have intended the meaning ascribed to them by the court. This assumes, of course, that there is no other language or content in the will which manifests a contrary intent.

In so saying we are not slavishly following dicta. Rather are we recognizing that in this field of testamentary draftsmanship it is important and even necessary to preserve as nearly as possible the continuity of interpretation given to words and phrases commonly employed in the preparation of wills. If there is a goodly measure of certainty and stability in judicial interpretation, the skilled draftsman can proceed with confidence to make use of certain phrases and to avoid others. As was said in *Hay* v. *Dole*, 119 Me. 421 at 423:

> "It is a general rule of testamentary construction that while untechnical words are understood to be used in their usual, ordinary and popular meaning, technical terms are presumed to be employed in their technical sense with the meaning ascribed to them by usage *and sanctioned by judicial decision* unless something in the context or subject matter clearly indicates that the testator intended a different use. * * * Especially should this rule obtain where, as here, the scrivener was evidently learned in the law, comprehended the exact legal significacation of the technical terms employed, and drafted the document with studied care." (Emphasis supplied)

With, we think, very much the same thought in mind, the court said in *Matter of Devoe, supra,* at page 286:

"I think that the decisions of this court, on the construction of provisions in wills similar to the one now before us, have created a rule of property which we are not justified in overthrowing, especially where the proposition that the testator might have had a different intent from that which we have ascribed to him is the merest surmise. Probably he never thought on the subject, and what testamentary disposition he would have made had the contingency that has arisen been called to his attention, no one can tell."

The *McCarthy* case was decided in 1923, several years before Mr. Goodspeed made his will. We think that in view of the language used in that opinion, he and his scrivener, obviously a skilled draftsman, were justified in assuming that if the words "legal heirs according to the laws at that time governing the descent of intestate estates" were employed, they would be understood and interpreted by the court as expressing his intent not to include a surviving spouse. We think that the language used by the opinion writer in *McCarthy* made it clear that a testator desiring to include the spouse of one of his children as a taker under such circumstances would need to make some clear and express provision which would leave no doubt as to his intention to do so. Mr. Goodspeed's failure to make such provision, viewed in the light of the indication as to how the court might be expected to interpret the language he did use, sufficiently evidences his intention not to enlarge the meaning of the words "legal heirs."

Accordingly, the claim of Dorothy I. Smith as surviving spouse must be denied, and the trustees should make distribution among the other defendants in the proportions fixed by the statute. The sitting justice is directed to fix reasonable counsel fees for all parties, to which shall be

added necessary disbursements, which sums shall be paid by the trustees and allowed in their accounts.

*Remanded to the Supreme Judicial Court in Equity for the allowance of fees and disbursements and for a decree in accordance with this opinion.*